Roger P. CRAIG, et al., Petitioners,

v.

**DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD, Respondent,**

**and**

Espresso, Inc., t/a Park Cafe, Intervenor.

No. 96–AA–1520.

District of Columbia Court of Appeals.

Argued Oct. 7, 1997.
Decided Dec. 10, 1998.

Roger P. Craig, Washington, DC, pro se.

Jo Anne Robinson, Interim Corporation Counsel at the time the statement was filed, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief, for respondent.

Paul L. Pascal, with whom Kathleen I. Andrews, was on the brief, Washington, DC, for intervenor.

Before WAGNER, Chief Judge, and KING, Senior Judge,* and MACK, Senior Judge.

WAGNER, Chief Judge:

Petitioners, Roger P. Craig, James O. Duguid, Charlene A. James, and John B. McCabe (petitioners) seek review and reversal of a decision of the District of Columbia Alcoholic Beverage Control Board (Board) granting intervenor, Expresso, Inc., t/a Park Cafe (Park Cafe) a class CR license to sell alcoholic beverages in its restaurant.[1] Craig

---

\* Judge King was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on November 23, 1998.

1. All of the named parties signed the Petition for Review. Roger Craig submitted a brief *pro se* on his own behalf, and purportedly on behalf of the remaining petitioners; however, D.C.App. R.

47(a) provides that "the right to appear *pro se* does not include the right to appear on behalf of other parties to the same proceeding." The record reflects that Craig represented that he is not a member of the Bar; therefore, we consider only his appeal and dismiss the petition as to the remaining individuals.

argues that the Board erred in granting the license. We affirm the Board's decision as to appropriateness for issuance of the license made under D.C.Code § 25–115(b) (1981). However, we reverse and remand the case to the Board for further proceedings consistent with this opinion, including determinations of whether Park Cafe meets the requirements for issuance of a license under D.C.Code § 25–116(a) (governing licenses in residential use districts) and § 25–115(g)(1)(A) (character of applicant).

## I.

### *Factual Background*

Park Cafe filed an application with the ABC Board for a liquor license, class CR, for its restaurant located at 106 13th Street, S.E. On October 17, 1994, Craig and the other petitioners filed protest petitions under D.C.Code § 25–115(b) (1981) objecting to Park Cafe's application on the grounds that, if granted, the establishment would adversely affect the: (a) peace, order and quiet of the neighborhood; (b) residential parking and vehicular and pedestrian safety; and (c) real property values.[2]

Craig filed a motion to dismiss, or alternatively, for summary denial of the application on the grounds that, under D.C.Code § 25–116(a), the Board could not grant a liquor license for premises located in a residential zone, and Park Cafe stipulated to facts showing that the restaurant was in a residential zone and did not meet any of the statutory exceptions to the provision. Specifically, Craig pointed out that Park Cafe could not qualify under the statutory exceptions because: (1) its entrance is not located inside a

hotel, club or apartment house, and (2) the restaurant's sign and display are visible from outside the building. The Board entered an order denying the motion to dismiss on November 1, 1995. Craig filed, and Park Cafe opposed, a motion for reconsideration. The Board granted the motion for reconsideration and set the case for briefing and an evidentiary hearing.

At the hearing, Park Cafe presented witnesses from the neighborhood who testified in support of granting the license. Park Cafe also placed in evidence the affidavit of the acting executive secretary of the Advisory Neighborhood Commission 6 B(ANC) showing neighbors' support for the application and the ANC Commission's vote in favor of Park Cafe's application.[3] On September 11, 1996, the Board issued its Findings of Fact, Conclusions of Law and Order, granting Park Cafe an ABC license, class CR.

## II.

### *The Board's Ruling*

Based on the evidence, the Board made findings as follows. Park Cafe had operated a restaurant on the first floor of a two story building located at 106 13th Street, S.E. for the past six years. The restaurant seats fifty people, features recorded music and has adequate parking on nearby streets. The ABC Board's investigator made six visits to the area between November 1995 and April 1996 and found no rowdiness, noise, bad odors or criminal behavior around the restaurant. Park Cafe invested $430,000 in renovations and improvements to the property, including $10,000 to replace an exhaust fan after receiving a complaint from an adjoining prop-

---

**2.** D.C.Code § 25–115(b) reads in pertinent part as follows:

> ▋ To qualify for issuance, transfer, or renewal of a license, an applicant shall demonstrate to the satisfaction of the Board that the establishment for which the license is sought is appropriate for the locality, section, or portion of the District where it is to be located. If no objection to the appropriateness of the application is filed, the establishment for which the license is sought shall be presumed to be appropriate for the locality, section, or portion of the District where it is to be located. In determining whether an establishment is appropri-

ate, the Board shall consider all relevant evidence of record, including:
> (A) The effect of the establishment on real property values;
> (B) The effect of the establishment on peace, order, and quiet;
> (C) The effect of the establishment upon residential parking needs and vehicular and pedestrian safety; . . . .

**3.** The affidavit of one of the original protestants, John McCabe, was not admitted because he never appeared for a hearing and could not be reached during the course of the evidentiary hearings.

erty owner about noise from the old one. The restaurant's clientele are mainly neighbors or congressional staffers, who range in age between thirty and sixty years. Although several illegally parked vehicles were observed outside the restaurant on one occasion, the restaurant has not disrupted parking. Based upon the testimony of Park Cafe's expert witness, the Board found that the establishment will not have a negative effect on property values in the neighborhood. The expert was of the opinion that, to the contrary, the issuance of the license would enhance property values.

One of the petitioners opposed the license because employees of the restaurant park their cars in front of his house, and he is concerned that patrons might become inebriated and cause disturbances. Another petitioner had made an unsuccessful attempt to purchase the building, and she was dissatisfied with services rendered by the restaurant in catering an affair at her home. Another petitioner complained that cars parked in front of the restaurant. There was one witness who opposed the issuance of the license because parking was difficult there and because she had difficulty selling her house. However, the witness was unable to show that the inability to sell her property resulted from the operation of the restaurant.

The Board concluded that Park Cafe had shown that issuance of the license would not adversely affect the peace, order and quiet of the neighborhood, residential parking, vehicular traffic or pedestrian safety. It concluded that the restaurant for which Park Cafe sought the license is appropriate for the area in which located and granted Park Cafe's application for issuance of a retailer's license class CR for its premises.

### III.

Craig argues that D.C.Code § 25–116(a) (1996) prohibits the Board from issuing a retailer class C liquor license in residential zoning districts. He contends that since the Park Cafe is located in a residential use (R–4) district and does not fall within any statutory exception, the Board had no authority to

issue the license by reason of the statutory prohibition. Park Cafe admits that the area surrounding its restaurant is zoned residential; however, it contends that it holds a valid certificate of occupancy issued by the Zoning Commission, through the Board of Zoning Adjustment (BZA), which creates an enclave exception for the Park Cafe in this residentially zoned district which the Board was obligated to accept for purposes of issuing the license.

The statute upon which petitioner relies reads in pertinent part:

> No retailer's licenses except class B or E shall be issued for any business conducted in a residential-use district as defined in the zoning regulations and shown in the official atlases of the Zoning Commission, except for a restaurant or tavern conducted in a hotel or apartment house, and then only when the entrance to such restaurant or tavern is entirely inside the hotel or apartment house, and no sign or display is visible from the outside of the building . . . .

D.C.Code § 25–116(a). Park Cafe stipulated that its restaurant is not in a hotel or apartment house having an entrance entirely inside the building and that it displays a sign outside its establishment. Further, Park Cafe does not contend that it is a club within the meaning of the statute. Thus, Park Cafe does not fall within the specified statutory exceptions.[4] Craig contends that these facts are dispositive to its argument that the Board erred in granting the license because of the statutory prohibition.

Park Cafe argues that in determining whether its restaurant is in a residential use district within the meaning of the zoning regulations, the Board must consider the powers of the Zoning Commission and the BZA to vary the land and building designations within the residential district designation. Essentially, Park Cafe contends here, as it did before the Board, that the issuance of the certificate of occupancy qualifies it for the issuance of the license notwithstanding the restrictions imposed by § 25–116(a).

These same arguments were advanced by the parties before the Board in Craig's mo-

4. This case does not involve a Class B or E    license.

tion to dismiss, Park Cafe's opposition thereto, and Craig's reply. The Board denied the motion without opinion and scheduled the case for a protest hearing. In explaining his decision, one member of the Board stated that "[p]ursuant to the [*Kopff*] case, I believe that we have no alternative but to deny the motion to dismiss or deny the license application, and schedule this for a protest hearing. I don't believe this Board has jurisdiction or authority once a Certificate of Occupancy is issued."

The Board member's reference was apparently to the decision of this court in *Kopff v. District of Columbia Alcoholic Beverage Control Bd.*, 413 A.2d 152, 154 (D.C.1980), upon which Park Cafe relies here for its position that the issuance of the certificate of occupancy prevented the Board from applying D.C.Code § 25–116(a) so as to preclude issuance of the liquor license. The decision in *Kopff*, however, does not interpret the statute at issue in this case nor preclude the Board from interpreting it.

At issue in *Kopff, supra,* was whether the ABC Board erred in excluding evidence offered in support of a claim that a liquor license should not be issued because of fire safety violations in the applicant's premises. *Kopff*, 413 A.2d at 154. Applicable regulations required a certificate of occupancy and other relevant licenses before an applicant could obtain a liquor license. *Id.* The Department of Economic Development had issued a license authorizing use of the applicant's premises as a restaurant seating 199 patrons, and there was uncontested testimony that the building was in compliance with building and safety codes. This court held that "[t]he Board did not err in relying on the duly-issued certificate of occupancy." *Id.* The court reasoned that the ABC Board had neither the authority nor the expertise to go behind the decisions of coordinate administrative departments which determined that compliance conditions had been met for issuance of certificates within their jurisdiction. *Id.* Thus, while the ABC Board's regulations require applicants to hold licenses from other departments as a precondition to obtaining a liquor license, it had no authority to review the validity of the coordinate agency's action. *Id.*

■ Unlike the *Kopff* case, here the Board was asked to determine whether the license applicant meets the requirements of the statute the Board is responsible for administering. Specifically, it was called upon to decide whether Park Cafe qualifies for the issuance of a liquor license under D.C.Code § 25–116(a). To make that determination, the Board is not required to review or overturn the decision of the agency which permitted Park Cafe to use its premises as a restaurant. What the Board must decide is whether § 25–116(a) can be interpreted to authorize issuance of a liquor license to a restaurant operating in a residential area under a certificate of occupancy issued by another agency. Initially, the chairperson of the Board recognized that this was the issue when she stated that "the issue, really, is not whether or not [Park Cafe] can operate a restaurant, it's how the Board could give a license, an alcohol license, to that establishment given the zoning and the way our § 25–116 reads...." Section 25–116 prohibits issuance of a liquor license except under certain conditions. The issue raised required the ABC Board to review its own statute and any applicable regulations, not to determine whether the Zoning Board erred in issuing the certificate of occupancy. Therefore, the decision of this court in the *Kopff* case does not preclude the Board's consideration of this question.

■ Park Cafe argues that in issuing a certificate of occupancy, the zoning authorities created an "enclave of exception" in this otherwise residentially designated district which the Board must recognize in considering its license application. It contends that, in interpreting its own statute, the ABC Board must refer to and give effect to the zoning regulations and official atlases referenced in the statute and that the Board reasonably interpreted the statute that way here. While the statute does require the Board to look to the zoning regulations and official atlases of the Zoning Commission for definition of which areas constitute residential-use districts for purposes of restricting the issuance of liquor licenses, the Board did

not undertake that analysis, believing itself constrained by the *Kopff* decision. The Board neither provided a legal interpretation nor resolved factual issues pertinent to application of the statute as interpreted.[5] Therefore, we cannot, as Park Cafe urges, simply accept the Board's decision as a reasonable interpretation of its statute to which this court can defer. *See Red Star Express v. District of Columbia Dep't of Employment Servs.*, 606 A.2d 161, 163 (D.C.1992) (citation omitted); *Washington Press Club v. District of Columbia Alcoholic Beverage Control Bd.*, 476 A.2d 1107, 1109 (D.C.1984). When this court reviews an agency's decision, its " 'interpretation of the statutes and regulations it administers will be sustained unless shown to be unreasonable or in contravention of the language of legislative history of the statute.' " *Id.* (quoting *Haight v. District of Columbia Alcoholic Beverage Control Bd.*, 439 A.2d 487, 491 (D.C.1981) (further citation omitted)). In this case, the Board has not provided an interpretation of the statute; therefore, we will remand this case to the agency for further consideration.

### IV.

Craig also argues that the ABC Board could not issue a liquor license in this case because Park Cafe is not the holder of a valid certificate of occupancy. In other words, Craig challenges another agency's decision to issue the certificate of occupancy. He relies on the Board's regulations which provide that:

> No license ... shall be issued to any person unless that person is the holder of a valid certificate of occupancy for the premises in which the business for which the license is sought is located....

23 DCMR § 404.1. He contends that the requirement of a valid license means that the Board has jurisdiction to inquire into wheth-

er the certificate of occupancy was issued properly.

Intervenor counters correctly that the powers of the Board, as set forth in the District of Columbia Alcoholic Beverages Control Act, D.C.Code §§ 25–101 to –148, do not authorize the Board to review the validity of certificates of occupancy issued by other agencies. Moreover, petitioners cannot review through their administrative process whether the Department of Consumer and Regulatory Affairs erred in issuing the certificate of occupancy. For the reasons discussed in part III of this opinion, the decision of this court in *Kopff* precludes the Board from reviewing the decisions of coordinate administrative departments and acting in effect as a court of appeals. *Kopff, supra,* 413 A.2d at 154. Therefore, we reject petitioner's argument that it should have been permitted to show that the certificate of occupancy was issued in error.

### V.

Petitioner argues that the Board failed to meet its statutory obligation to determine whether the principal officers, directors and stockholders of the Park Cafe are of good moral character and generally fit for the responsibilities of licensure. They contend that D.C.Code § 25–115(g) requires the Board to make findings on these issues and that the Board failed to make them. They also contend that the Board excluded evidence bearing upon these issues.

D.C.Code § 25–115(g)(1)(A) provides in pertinent part:

> Before issuing, transferring, or renewing a license, the Board shall determine that ... each of the principal officers, directors, and stockholders of an applicant corpora-

---

5. For example, Craig contends factually that the certificate of occupancy for the restaurant was issued not by a zoning authority, but by the Department of Consumer and Regulatory Affairs, which Craig contends has no authority to vary the use of a property within a residential district. He argues that to read the statute as Park Cafe suggests, making every establishment with a certificate of occupancy eligible for a liquor license notwithstanding the prohibition and guidelines for issuance to those within a residential district, would render meaningless the provisions of § 15–116(a), because all restaurants must have a certificate of occupancy to operate. *See* 11 DCMR § 3203.1. These are among the questions which the Board must address upon remand in interpreting and applying the statute.

tion is of good moral character and generally fit for the responsibilities of licensure....

At the Board level, petitioners filed a challenge pursuant to D.C. Code § 25–115(b)(1). This separate section of the statute addresses the appropriateness of the license applicant's establishment based upon its impact on the peace, order and quiet of the neighborhood, property values, parking, and pedestrian safety. *Id.*[6] Under the Board's regulations, this process is an adjudicatory proceeding, designated a protest hearing. 23 DCMR § 1510.1. The process may be initiated by "protestants" who submit written protests or circulate what is known as a § 14(b) petition, as petitioners did in this case. *See* 23 DCMR § 1510.2. The Board outlined at the hearing the protest or contested issues raised by petitioners. The issues contested related only to the appropriateness requirements. The Board's regulations require findings only on contested issues of fact. 23 DCMR § 1618.2.[7]

■ Here, the Board made findings of fact only on the contested issues raised by petitioners, *i.e.,* the appropriateness questions under § 115(b).[8] We perceive no basis for concluding that the Board cannot restrict protestants' presentation of evidence to issues raised in its protest petition and preliminary hearings. There is no inherent unfairness in rules which require advance notice to the opposing party of issues raised by a protestant in a contested proceeding. On the contrary, the interest of fairness and an orderly procedure is advanced by such rules. Since petitioners did not raise as a contested issue the question of the applicant's character, thereby placing the applicant and the Board on notice of such a challenge, we find no error in the Board's exclusion of evidence which petitioner contends it offered relevant to that issue.[9] *See Haight, supra,* 439 A.2d at 491.

■ Nevertheless, we see nothing in the statute which relieves the Board from its obligation to determine that the applicant "is of good moral character and generally fit for the responsibilities of licensure" before issuing the license. *See* D.C.Code § 25–115(g)(1)(A). This obligation is not dependent upon whether or not anyone makes a character challenge under § 25–115(g)(1)(A). Before issuing the license, the Board must be satisfied that all statutory requirements have been met. *Haight, supra,* 439 A.2d at 493 (citation omitted). Therefore, upon remand, the Board must make the required character determination, before it decides finally whether any license should be issued.

■ For the foregoing reasons, we affirm the Board's decision on the appropriateness issue and evidentiary rulings raised by Craig; and we reverse and remand the case to the Board on the remaining issues for further

---

6. *See supra,* note 2.

7. Decisions of the Board require:
   Findings of Fact and Conclusions of Law shall consist of a concise statement of the Board's conclusions on each contested issue of fact, and shall be based solely upon evidence contained in the record and facts of which the Board took judicial notice.
   23 DCMR § 1618.2. The next section, 23 DCMR § 1618.4, provides:
   In cases where a hearing for an original application or the transfer of an existing license to a new location is sought, the findings of fact and conclusions of law shall include, but not be limited to, the following:
   (a) the boundaries of the neighborhood;
   (b) the appropriateness of the location for which the license is sought, in accordance with D.C.Code § 25–115 and § 400 of this subtitle; and

(c) a finding as to the wishes of the persons voting, owning property or residing in the vicinity.

8. We find no error in the determinations concerning the appropriateness factors.

9. Petitioners argue that there was also evidence in the record, on the issue of character and fitness, to which the Board "closed its eyes." For example, they contend that Mr. Vinet, one of the owners of Park Cafe, parked his vehicle illegally over and over and switched property tags. In deciding the appropriateness issue, the Board found that the establishment had not caused any disruptions or parking problems. To the extent that the Board finds on remand that this evidence bears on character and fitness, it should consider this evidence in making its character determination.

proceedings consistent with this opinion.[10]

*So ordered.*

10. Craig argues that the Board erred in quashing a subpoena addressed to Park Cafe requesting numerous documents. The Board found that the request was burdensome and unnecessary. Such decisions are within the Board's discretion, and we find no basis to disturb that ruling. *See Haight, supra,* 439 A.2d at 491.