129 Nev., Advance Opinion 70

# IN THE SUPREME COURT OF THE STATE OF NEVADA

IN RE: CITYCENTER CONSTRUCTION AND LIEN MASTER LITIGATION.

No. 61130

---

THE CONVERSE PROFESSIONAL GROUP, D/B/A CONVERSE CONSULTANTS,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE ELIZABETH GOFF GONZALEZ, DISTRICT JUDGE,
Respondents,
   and
CENTURY STEEL, INC., AND PACIFIC COAST STEEL,
Real Parties in Interest.



FILED

OCT 03 2013

Original petition for a writ of mandamus challenging a district court order denying petitioner's motion to dismiss real parties in interest's third- and fourth-party complaints.

*Petition granted.*

Wilson Elser Moskowitz Edelman & Dicker, LLP, and Michael M. Edwards and J. Scott Burris, Las Vegas,
for Petitioner.

Hutchison & Steffen, LLC, and Michael K. Wall, L. Kristopher Rath, and Cynthia G. Milanowski, Las Vegas; Koeller, Nebeker, Carlson & Haluck, LLP, and Megan K. Dorsey and Robert C. Carlson, Las Vegas,
for Real Party in Interest Century Steel, Inc.

Gordon & Rees, LLP, and Robert E. Schumacher, Las Vegas; Procopio, Cory, Hargreaves & Savitch, LLP, and Scott R. Omohundro, Craig A. Ramseyer, and Timothy E. Salter, San Diego, California, for Real Party in Interest Pacific Coast Steel.

---

BEFORE THE COURT EN BANC.[1]

## OPINION

By the Court, SAITTA, J.:

"[I]n an action involving nonresidential construction," the complainant's attorney "shall file [an affidavit and expert report] concurrently with the service of the first pleading." NRS 11.258(1); *see* NRS 11.258(3). An "[a]ction involving nonresidential construction" concerns the construction (and related activities) of a nonresidential building and is against a "design professional." NRS 11.2565(1). The district court "shall dismiss [the] action" if NRS 11.258 is violated. NRS 11.259(1). In *Otak Nevada, L.L.C. v. Eighth Judicial District Court*, 127 Nev. ___, 260 P.3d 408 (2011), we held that an amended pleading must be dismissed when it followed an initial pleading that was void ab initio—of no legal effect—because it was filed without the affidavit and expert report required by NRS 11.258. *Id.* at ___, ___, 260 P.3d at 409, 411-12.

Petitioner Converse Professional Group relied on *Otak* in filing motions to dismiss amended complaints that real parties in interest

---

[1]The Honorable Kristina Pickering, Chief Justice, and the Honorable Ron D. Parraguirre, Justice, voluntarily recused themselves from participation in the decision of this matter.

Century Steel, Inc., and Pacific Coast Steel (PCS) filed against it. Century and PCS were subcontractors whose work Converse had inspected. After being brought into commercial construction litigation as defendants, Century and PCS filed third- and fourth-party complaints and amended complaints against Converse to recover damages that allegedly arose from the deficient performance of its services. Converse filed motions to dismiss the amended complaints. It asserted that it was a design professional and that the initial pleadings were void ab initio and could not be cured by the amended pleadings because Century and PCS failed to file the attorney affidavit and expert report that NRS 11.258 requires for actions involving nonresidential construction. After expressing concern that NRS 11.259(1) may require dismissing the entire litigation, the district court denied the motions.

Converse brings this petition for a writ of mandamus to compel the dismissal of the amended pleadings. We conclude that Century's and PCS's initial causes of action brought actions that were within the scope of NRS 11.2565(1)'s definition of an action involving nonresidential construction. As a result, because their pleadings identified Converse's services that implicated the practice of professional engineering, see NRS 625.050(1)(a), their pleadings were against a design professional, see NRS 11.2565(2)(b), thereby subjecting them to NRS 11.258's attorney affidavit and expert report requirements. We further conclude that the *Otak* court correctly construed NRS 11.259(1) as requiring the dismissal of an amended pleading—not an entire action—that followed an initial pleading that was filed without adhering to NRS 11.258. Thus, the district court must dismiss the amended pleadings

against Converse as they were void ab initio for their failure to comply with NRS 11.258. Accordingly, we grant Converse's petition.

## FACTS AND PROCEDURAL HISTORY

Century, and its successor in interest PCS, subcontracted to perform the steel installation on a new building, the Harmon Tower, which was to be part of a large-scale, mixed-use development in Las Vegas known as CityCenter. Converse was hired by the project's owner to render third-party quality control and assurance inspections. According to Century's and PCS's pleadings, Converse's services included inspecting their work for quality assurance and compliance with construction plans and specifications.

After alleged defects were discovered in the Harmon Tower, construction stopped, and litigation between the project's owner, general contractor, and subcontractors began. Century and PCS filed third- and fourth-party complaints against Converse for contribution and/or indemnity allegedly warranted by Converse's negligent inspection work. When these claims were dismissed, Century and PCS were granted leave to file amended complaints against Converse alleging negligent and intentional misrepresentation, contribution, and equitable indemnity. Century and PCS did not file an affidavit or expert report regarding the basis for their claims when the initial complaints or the amended complaints were served. In response, Converse moved to dismiss the amended pleadings pursuant to NRS 11.259(1), arguing that Century and PCS failed to file the attorney affidavit and expert report with their initial complaints, as is required by NRS 11.258 for actions against design professionals involving nonresidential construction.

During a hearing on the motions, the district court expressed its concern that if it agreed with Converse's position, then NRS 11.259(1) may require dismissing the entire action, including pleadings by parties other than Century and PCS. Relying on *Otak*—where only an amended pleading was dismissed because the initial complainant violated NRS 11.258—Converse argued that only Century's and PCS's amended pleadings must be dismissed. *See Otak*, 127 at ___, 260 P.3d at 411-12. The district court summarily denied Converse's motions, and this petition for a writ of mandamus followed.

## DISCUSSION

"A writ of mandamus is available to compel the performance of an act that the law requires . . . or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008); *see* NRS 34.160. Here, Converse argues that the law requires that Century's and PCS's amended pleadings be dismissed as a result of their failure to file the NRS 11.258 attorney affidavit and expert report at the time the initial complaints were served. Because the determination of this issue is not fact-bound and involves unsettled issues of law that will likely recur, and because resolving this issue at this early stage of the underlying litigation promotes judicial economy, our consideration of Converse's writ petition is warranted. *See* NRS 34.330 (providing that a writ of mandamus is available only when no adequate legal remedy exists); *Buckwalter v. Eighth Judicial Dist. Court*, 126 Nev. ___, ___, 234 P.3d 920, 921 (2010) (recognizing that we may consider a petition for writ relief contesting the denial of a motion to dismiss when "the issue is not fact-bound and involves an unsettled and potentially significant, recurring question of

law"); *Int'l Game Tech.*, 124 Nev. at 197-98, 179 P.3d at 558-59 (noting that the right to appeal from a final judgment is not always an adequate legal remedy that bars writ relief, such as when a case is at an early point in litigation and writ relief advances judicial economy).

*The amended pleadings must be dismissed*

Resolving the issues raised in this writ petition requires our de novo review of the statutes that govern actions involving nonresidential construction. *See Washoe Med. Ctr. v. Second Judicial Dist. Court*, 122 Nev. 1298, 1302, 148 P.3d 790, 792 (2006) (providing that de novo review applies to issues of law such as statutory interpretation). The ultimate goal of interpreting statutes is to effectuate the Legislature's intent. *Cromer v. Wilson*, 126 Nev. ___, ___, 225 P.3d 788, 790 (2010). We interpret clear and unambiguous statutes based on their plain meaning. *Id.* But when a statute is ambiguous, we consult other sources, such as legislative history, reason, and policy to identify and give effect to the Legislature's intent. *State, Div. of Ins. v. State Farm Mut. Auto. Ins. Co.*, 116 Nev. 290, 294, 995 P.2d 482, 485 (2000).

For actions "involving nonresidential construction," NRS 11.258 requires the complainant's attorney to file, when the first pleading is served, an affidavit and expert report attesting to a reasonable basis for the action.[2] NRS 11.258(1), (3). If the attorney fails to do so, then the district court "shall dismiss [the] action." NRS 11.259(1); *see Otak Nev., L.L.C. v. Eighth Judicial Dist. Court*, 127 Nev. ___, ___, 260 P.3d 408, 411

---

[2]NRS 11.258(2) provides for a late-filed affidavit under certain circumstances not applicable to this case.

(2011). An action "involving nonresidential construction" is defined, in pertinent part, as an action "against a design professional" that pertains to the "design, construction, manufacture, repair or landscaping" of a nonresidential building. NRS 11.2565(1).

Thus, as Converse asserts, because Century and PCS did not submit an NRS 11.258 attorney affidavit and expert report concurrently with the initial pleadings, the amended pleadings against Converse must be dismissed if Converse is a design professional and the claims against it contained in the initial pleadings involved the design, construction, manufacture, repair, or landscaping of the Harmon Tower, which concededly is a new nonresidential building. *See Otak*, 127 Nev. at ___, 260 P.3d at 411-12. Century and PCS argue that Converse is not a design professional and that their initial pleadings did not involve the design, construction, or manufacture of the Harmon Tower but, rather, involved Converse's deficient performance and representations about its inspections. We now address whether Century's and PCS's initial pleadings constituted actions "involving nonresidential construction" requiring them to comply with the requirements of NRS 11.258.

*Century's and PCS's initial pleadings involved the construction of a nonresidential building*

Under NRS 11.2565(1), an "'[a]ction involving nonresidential construction'" is

an action that:

> (a) Is commenced against a design professional; and

> (b) Involves the design, construction, manufacture, repair or landscaping of a nonresidential building or structure . . . .

The term includes, without limitation, an action for professional negligence.

NRS 11.2565's definition of an action involving nonresidential construction is expansive; the claims do not have to be directly based on the design, construction, or manufacture of a nonresidential building, but merely "involve[ ]" those activities. *Id.* Hence, an action involving nonresidential construction includes *any* cause of action against a design professional that concerns the construction of a nonresidential building. Construction of a building involves inspection of the ongoing construction activity, and claims that a quality control and assurance inspector made misrepresentations about the construction's quality or was at fault for defective conditions concern the construction of the building. Thus, Century's and PCS's claims within their initial pleadings against Converse "[i]nvolve[d]" the construction of a nonresidential building. But in order to conclude that they brought actions involving nonresidential construction that triggered NRS 11.258's requirements, Converse must also have been a design professional.

*Converse is a design professional*

A design professional is someone who holds "a professional license or certificate issued pursuant to chapter 623 [Architecture, Interior Design and Residential Design], 623A [Landscape Architects] or 625 [Professional Engineers and Land Surveyors] of NRS or a person primarily engaged in the practice of professional engineering, land surveying, architecture or landscape architecture." NRS 11.2565(2)(b). Relevant here, "'[t]he practice of professional engineering' includes, but is not limited to . . . [a]ny professional service which involves the application of engineering principles and data, such as . . . consultation, investigation,

evaluation, planning and design, or responsible supervision of construction . . . wherein the public welfare or the safeguarding of life, health or property is concerned . . . ." NRS 625.050(1)(a). It also includes services that are "necessary to the planning, progress and completion of any engineering project or to the performance of any engineering service." NRS 625.050(1)(b).

To determine whether Converse is a design professional, we accept the allegations within Century's and PCS's pleadings as true. *See Buzz Stew, L.L.C. v. City of N. Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008) (providing that, in reviewing an order that pertains to a motion to dismiss, we accept the nonmoving party's factual allegations in the complaint as true). PCS alleged that Converse was required to inspect the steel work for irregularities and deficiencies and make certain that the installation of the steel comported with construction plans and specifications. Century alleged that Converse's services included, but was not limited to, inspections of the steel, conducting tension tests, and quality assurance services. Both of their amended pleadings referenced the agreement that governed Converse's services, under which Converse was responsible for the sampling and testing of materials as they were being installed and the performance of tensile strength tests on the steel, which involves engineering principles to determine how the steel responds to various amounts of stress.[3] These services implicate the practice of

---

[3]Although we generally do not consider matters outside the pleading in reviewing an order denying a motion to dismiss, *see Witherow v. State, Bd. of Parole Comm'rs*, 123 Nev. 305, 307-08, 167 P.3d 408, 409 (2007), in this matter, where the pleadings explicitly referred to the agreement that
*continued on next page . . .*

professional engineering as they involve the observation and supervision of a portion of the Harmon Tower's construction. By virtue of engaging in the practice of engineering, as gleaned from the services that were identified in Century's and PCS's pleadings, Converse is a design professional.

Century's and PCS's initial pleadings brought actions involving nonresidential construction against Converse, a design professional, which required Century and PCS to comply with NRS 11.258's attorney affidavit and expert report requirements. Their failure to comply with these requirements rendered their initial pleadings against Converse void ab initio and, therefore, not subject to cure by amendment. *See Otak*, 127 Nev. at ___, 260 P.3d at 411-12.

---

*. . . continued*

governed Converse's services, the agreement is within the scope of our review. *See Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998) (providing that, with respect to a motion to dismiss, the district court could consider an agreement that the complaint discussed, that was in the record, and that the parties did not contest as being unauthentic); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002); *Greene v. Eighth Judicial Dist. Court*, 115 Nev. 391, 393, 990 P.2d 184, 185 (1999) (providing that federal court interpretations of the Federal Rules of Civil Procedure are persuasive authority). Also, PCS contests that Converse's appendices that accompany the petition include documents that were not before the district court. The issues in this petition limit our review to the pleadings and the agreement governing Converse's services, which were before the district court.

*NRS 11.259(1) and the dismissal of Century's and PCS's amended pleadings*

NRS 11.259(1) provides that the district court "shall dismiss an action involving nonresidential construction" where the complainant fails to comply with NRS 11.258's attorney affidavit and expert report requirements. In this matter, the disagreement between the district court and Converse about the meaning of the term "action" in NRS 11.259(1) reveals an ambiguity. The district court appears to have concluded that an entire case must be dismissed under NRS 11.259(1) based on a strict reading of the term "action," which has been defined by this court in a different context as "includ[ing] the original claim and any crossclaims, counterclaims, and third-party claims." *United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. v. Manson*, 105 Nev. 816, 820, 783 P.2d 955, 957 (1989) (discussing NRCP 41(e)'s language giving parties five years to bring an action to trial). Suggesting another reasonable, less restrictive interpretation of the term, in *Otak* we applied NRS 11.259(1) to require the dismissal of an amended third-party complaint only because the first complaint was void ab initio and thus could not be amended. *See Otak*, 127 Nev. at ___, 260 P.3d at 409, 411-12. Because "action" for NRS 11.259 purposes could be reasonably read either way, it is ambiguous. *See McKay v. Bd. of Supervisors of Carson City*, 102 Nev. 644, 649, 730 P.2d 438, 442 (1986) (providing that a statute is ambiguous if it is "capable of being understood in two or more senses by reasonably informed persons").

Although we often rely on legislative history to resolve statutory ambiguity, *State, Div. of Ins. v. State Farm Mut. Auto. Ins. Co.*, 116 Nev. 290, 294, 995 P.2d 482, 485 (2000), the legislative history behind

SUPREME COURT
OF
NEVADA

(O) 1947A

11

NRS 11.259(1) does not clarify what the Legislature meant in requiring the dismissal of an "action." Thus, we resort to other rules of statutory construction. *See Cromer v. Wilson*, 126 Nev. ___, ___, 225 P.3d 788, 790 (2010).

We interpret statutes to "conform[ ] to reason and public policy." *Great Basin Water Network v. State Eng'r*, 126 Nev. ___, ___, 234 P.3d 912, 918 (2010). In so doing, we avoid interpretations that lead to absurd results. *City Plan Dev., Inc. v. Office of Labor Comm'r*, 121 Nev. 419, 435, 117 P.3d 182, 192 (2005). "Whenever possible, [we] will interpret a rule or statute in harmony with other rules or statutes." *State Farm*, 116 Nev. at 295, 995 P.2d at 486 (concluding that a statutory ambiguity may be resolved by referring to related statutes); *Allianz Ins. Co. v. Gagnon*, 109 Nev. 990, 993, 860 P.2d 720, 723 (1993); *see also* 2B Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 51:1, at 183 (7th ed. 2012) ("[S]tatutes dealing with the same subject as the one being construed . . . are . . . [an] aid . . . [for] interpretation.").

In this instance, considering the way in which the Legislature uses the term "action" in conjunction with other relevant statutes reveals that the term is used synonymously with "pleading." Under NRS 11.258(3)(e), the required expert report must include "[a] statement that the expert has concluded that there is a reasonable basis for *filing the action*." (Emphasis added.) Other provisions in NRS 11.258 use the verb "filing" with the term "action." *See* NRS 11.258(2), (4). The Nevada Rules of Civil Procedure, however, do not provide for the *filing* of an *action*. Instead, they provide for the filing of a complaint, which is a *pleading*, to initiate an action. NRCP 3; NRCP 7(a). Hence, the term "action" in NRS

11.258 and NRS 11.259 is used in a fashion that is synonymous with "pleading."

Moreover, when litigation includes several parties' pleadings, it is unreasonable to dismiss all the parties' pleadings because two parties filed void complaints. Doing so hinders judicial economy by precluding resolution of the causes of action within the pleadings that are free of procedural or substantive defects. We refuse to construe NRS 11.259(1) in a way that reaches this result. As gleaned from the statutory language, the apparent intent of NRS 11.259(1) and NRS 11.258 is to advance judicial economy and prevent frivolous suits against design professionals by requiring a complaint to include an expert report and attorney affidavit regarding the suit's reasonable basis. In light of this intent, we conclude that the *Otak* court correctly applied NRS 11.259(1) to require the dismissal of a *pleading*—not the entire action. *Otak Nev., L.L.C. v. Eighth Judicial Dist. Court*, 127 Nev. ___, ___, ___, 260 P.3d 408, 409, 411-12 (2011). Accordingly, the district court must dismiss Century's and PCS's amended pleadings that pertain to Converse because their initial pleadings against Converse were void ab initio and of no legal effect for the lack of the attorney affidavit and expert report required by NRS 11.258.

## CONCLUSION

We grant Converse's petition for a writ of mandamus to compel the dismissal of the amended pleadings. We direct the clerk of this court to issue a writ of mandamus that instructs the district court to vacate its orders denying Converse's motions to dismiss Century's and

PCS's amended pleadings and to grant these motions by dismissing the amended pleadings that pertain to Converse.[4]

_____, J.
Saitta

We concur:

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____

[4]In light of our disposition, we need not address the additional issues that Converse raises in its petition that were premised on the initial pleadings not being deemed void ab initio. Additionally, we have considered the parties' remaining contentions and conclude that they lack merit.