133 Nev., Advance Opinion 110

# IN THE SUPREME COURT OF THE STATE OF NEVADA

DANIEL JAMES RODRIGUEZ,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 71920

FILED

DEC 28 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of battery with the use of a deadly weapon. Second Judicial District Court, Washoe County; Lynne K. Simons, Judge.

*Affirmed.*

Martin H. Wiener, Reno,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Stephan Hollandsworth, Deputy District Attorney, Washoe County,
for Respondent.

BEFORE HARDESTY, PARRAGUIRRE and STIGLICH, JJ.

*OPINION*

By the Court, STIGLICH, J.:

At issue in this appeal is the definition of "deadly weapon" within the context of battery. Daniel Rodriguez contends the jury

instruction that led to his conviction for battery with the use of a deadly weapon was erroneous because the object he used to stab his victim—a screwdriver—is not designed to be inherently dangerous. We disagree because, within the context of battery, "deadly weapon" includes an instrument which, under the circumstances in which it is used, is readily capable of causing substantial bodily harm or death. The jury instructions accurately stated that definition. Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

Appellant Daniel Rodriguez used a screwdriver to stab a 66-year-old man in the neck. The screwdriver was four to six inches long. It broke through the victim's skin, causing bleeding and one night of hospitalization. The State charged Rodriguez with battery with the use of a deadly weapon, causing substantial bodily harm, against a person at least sixty years of age.

Prior to trial, Rodriguez repeatedly contested the "deadly weapon" allegation, arguing that a screwdriver could not meet the narrow definition of "deadly weapon" he claimed applies to NRS 200.481(2)(e), which governs the crime of battery with the use of a deadly weapon. The district court rejected Rodriguez's motions to dismiss the deadly weapon allegation.

When it came time to settle jury instructions, Rodriguez and the State submitted competing "deadly weapon" definitions. Rodriguez submitted an "inherently dangerous" definition:

> A deadly weapon is any instrument which, if used in the ordinary manner contemplated by its design or construction, will, or is likely to cause a life-threatening injury or death.

The State offered a "functional" definition:

> A "deadly weapon" is defined as any weapon, device, instrument, material or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm or death.

The district court instructed the jury according to the State's definition.

The jury convicted Rodriguez of battery with the use of a deadly weapon but found substantial bodily harm did not result. He was sentenced according to the statutory guidelines, NRS 200.481(2)(e)(1), with an enhancement because his victim was over the age of sixty, NRS 193.167.

The sole issue on appeal is whether the jury instructions accurately defined "deadly weapon" within the context of NRS 200.481(2)(e), battery with the use of a deadly weapon.

## DISCUSSION

Rodriguez argues that the district court abused its discretion by instructing the jury on the "functional" definition of deadly weapon, to wit, that a deadly weapon includes any "instrument . . . which, under the circumstances in which it is used . . . is readily capable of causing substantial bodily harm or death." We review a district court's settling of jury instructions for an abuse of discretion or judicial error, but we review de novo whether those instructions correctly state the law. *Nay v. State*, 123 Nev. 326, 330, 167 P.3d 430, 433 (2007).

Rodriguez contends that, within the context of NRS 200.481(2)(e), the Legislature intended to define "deadly weapon" according to the inherently deadly definition, as opposed to the broader functional definition applied by the district court. Both of these definitions have roots in Nevada caselaw. According to the functional definition, virtually any

object can constitute a "deadly weapon," so long as it is used in a "deadly manner." *Zgombic v. State*, 106 Nev. 571, 573, 798 P.2d 548, 549 (1990) (discussing both tests and ultimately adopting inherently dangerous definition for sentence enhancement statute purposes), *superseded by statute*, 1995 Nev. Stat., ch. 455, § 1, at 1431. Under the inherently dangerous definition, by contrast, a screwdriver would not qualify as a "deadly weapon" because a screwdriver is "not *intended* by [ ] nature or design to be used to cause injury." *Hutchins v. State*, 110 Nev. 103, 111, 867 P.2d 1136, 1141 (1994) (reviewing sentence enhancement under inherently dangerous test). To the extent that the Legislature's intent is unclear, Rodriguez urges this court to apply the rule of lenity to resolve ambiguity in his favor.

"The ultimate goal of interpreting statutes is to effectuate the Legislature's intent." *In re CityCenter Constr. & Lien Master Litig.*, 129 Nev. 669, 673, 310 P.3d 574, 578 (2013). When interpreting a statute, our starting point is the statute's plain meaning. *See Robert E. v. Justice Court*, 99 Nev. 443, 445, 664 P.2d 957, 959 (1983).

NRS 200.481 criminalizes battery, the "willful and unlawful use of force or violence upon the person of another." NRS 200.481(1)(a). Absent aggravating factors, battery is a misdemeanor, NRS 200.481(2)(a), but it becomes a category B felony if the batterer used a "deadly weapon," NRS 200.481(2)(e). "Deadly weapon" is not defined within the statute, and we find no clues within the statute itself as to how the term should be defined. Therefore, the plain language of NRS 200.481(2)(e) is ambiguous as to what constitutes a "deadly weapon."

When a statute's plain language is ambiguous, "we turn to other legitimate tools of statutory interpretation." *Castaneda v. State*, 132 Nev.,

SUPREME COURT
OF
NEVADA

(O) 1947A

4

Adv. Op. 44, 373 P.3d 108, 111 (2016). Of relevance here is the presumption that, "[w]hen a legislature adopts language that has a particular meaning or history . . . the legislature intended the language to have meaning consistent with previous interpretations of the language." *Beazer Homes Nev., Inc. v. Eighth Judicial Dist. Court*, 120 Nev. 575, 580-81, 97 P.3d 1132, 1135-36 (2004).

In 1971, when the Legislature enacted NRS 200.481(2)(e), *see* 1971 Nev. Stat., ch. 612, §§ 1-3, at 1384-85, the functional definition was one of two accepted "deadly weapon" definitions within Nevada caselaw. As early as 1870, this court defined objects as "deadly weapons" if they satisfied *either* the inherently dangerous *or* the functional test. *State v. Napper*, 6 Nev. 113, 115 (1870) (defining deadly weapon as "a weapon deadly either in its nature, or capable of being used in a deadly manner"); *see also State v. McNeil*, 53 Nev. 428, 436, 4 P.2d 889, 890 (1931) ("[W]e can easily conceive of many circumstances in which a given weapon could be equally deadly in many ways, regardless of the purpose for which it is mainly intended to be used."); *State v. Davis*, 14 Nev. 407, 413 (1879) ("It was peculiarly within the province of the jury, under the facts of this case, to determine, as a fact, whether the club in defendant's hand, as it was used by him, was likely to produce fatal consequences or not."). Thus, because our caselaw defined "deadly weapon" according to the functional definition when the Legislature enacted NRS 200.481(2)(e), we presume that the Legislature intended the functional definition to apply. *See Beazer Homes*, 120 Nev. at 580-81, 97 P.3d at 1135-36.

Rodriguez cites to *Zgombic v. State* as support for applying the inherently dangerous definition. 106 Nev. at 574, 798 P.2d at 550. In *Zgombic*, we rejected the functional definition for "deadly weapon" within

SUPREME COURT
OF
NEVADA

(O) 1947A

the context of NRS 193.165.[1] *Id.* NRS 193.165 provides enhanced sentences for crimes committed with a deadly weapon, but it does not apply to crimes like NRS 200.481(2)(e) that contain "deadly weapon" as a "necessary element" of the underlying crime. NRS 193.165(4). In rejecting the functional definition, we reasoned, "NRS 193.165 is designed to deter injuries caused by *weapons*, not by *people*," so "interpreting the deadly weapon clause in NRS 193.165 by means of a functional test was not what our legislature intended." *Zgombic*, 106 Nev. at 574, 576, 798 P.2d at 550-51.

But *Zgombic* is inapposite for two reasons. First, *Zgombic* explicitly exempted statutes like NRS 200.481(2)(e) from its holding. *Id.* at 574, 798 P.2d at 550 ("We have no dispute with [ ] cases which use the functional test to define a deadly weapon when a deadly weapon is an element of a crime. Indeed, that is the interpretation generally followed in Nevada."). Second, five years after *Zgombic* was decided, our Legislature superseded its holding by amending NRS 193.165 to define "deadly weapon" according to *both* the inherently dangerous *and* the functional definitions. 1995 Nev. Stat., ch. 455, § 1, at 1431. The Legislature's rejection of *Zgombic* indicates its continued approval of the functional definition.

Finally, Rodriguez directs us to NRS 193.165 itself. NRS 193.165(6) contains an introductory clause that limits its definitions of "deadly weapon" to "this section." Because NRS 200.481(2)(e) is exempt from NRS 193.165's enhancement provisions, Rodriguez argues that extending the definitions to NRS 200.481(2)(e) contravenes NRS 193.165(6)'s express limitation. This court rejected a similar argument in

---

[1]At the time *Zgombic* was decided, NRS 193.165 did not define "deadly weapon." 1981 Nev. Stat., ch. 780, § 1, at 2050.

SUPREME COURT
OF
NEVADA

(O) 1947A

6

*Funderburk v. State*, 125 Nev. 260, 262, 212 P.3d 337, 338-39 (2009). In that case, Samaja Funderburk was convicted of burglary while in possession of a deadly weapon for burglarizing a McDonald's with a BB gun. *Id.* at 261-62, 212 P.3d at 338; *see also* NRS 205.060(4) (burglary while in possession of a deadly weapon). This court rejected Funderburk's argument that NRS 193.165(6)'s definitions are inapplicable to crimes that include "deadly weapon" as an element of the crime. *Funderburk*, 125 Nev. at 262 n.4, 212 P.3d at 339 n.4. Instead, we held those definitions to be "instructive" within the context of charges of burglary while in possession of a deadly weapon. *Id.* at 261, 212 P.3d at 337. As relevant here, then, *Funderburk* demonstrates that although NRS 193.165(6)'s definitions do not *necessarily* extend beyond NRS 193.165, nothing *prevents* them from helping to define "deadly weapon" within other statutes.

In sum, the Legislature intended "deadly weapon" within NRS 200.481(2)(e) to be interpreted broadly, according to both the functional definition and the inherently dangerous definition. Because we find the Legislature's intent to be sufficiently clear on this issue, we decline Rodriguez's invitation to apply the rule of lenity. *See State v. Lucero*, 127 Nev. 92, 99, 249 P.3d 1226, 1230 (2011) ("[T]he rule [of lenity] only applies when other statutory interpretation methods . . . have failed to resolve a penal statute's ambiguity.").

Therefore, the district court had discretion to determine which definition of "deadly weapon" was appropriate given the facts of this case. Given that a screwdriver clearly fails the inherently dangerous definition, *see Hutchins*, 110 Nev. at 111, 867 P.2d at 1141, the district court properly exercised its discretion in instructing the jury according to the functional definition. As we find no legal error or abuse of the district court's discretion

in settling the jury instructions, and Rodriguez does not challenge the sufficiency of the evidence supporting his conviction, we affirm Rodriguez's conviction of battery with the use of a deadly weapon.

## CONCLUSION

Because this court has consistently defined "deadly weapon" according to both the functional and the inherently dangerous definitions, the district court acted within its discretion in settling the jury instructions in the context of battery according to the functional definition. Accordingly, we affirm Rodriguez's conviction for battery with the use of a deadly weapon.

_____, J.
Stiglich

We concur:

_____, J.
Hardesty

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A