*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-478

MYRAN D. JONES II, APPELLANT,

V.

ROSE BROOKS, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-1777-10)

(Hon. Anita Josey-Herring, Trial Judge)

(Submitted March 20, 2014                    Decided August 7, 2014)

Myran D. Jones II, *pro se*.

Ayanna Brooks, *pro se*.[*]

Before FISHER and MCLEESE, *Associate Judges*, and KING, *Senior Judge*.

FISHER, *Associate Judge*: Appellant Myran D. Jones II raises four claims of error stemming from a trial on a breach of contract claim that resulted in a judgment against him. Finding no reversible error on any of the issues he raises,

---

[*] See note 3, *infra*.

we affirm. We publish this opinion to emphasize that a power of attorney does not authorize the designee to engage in the practice of law.

## I.     Factual Background

On March 19, 2010, appellee Ayanna Brooks filed a handwritten complaint "asking the court to order Myran D. Jones II to pay [her] for rent and late charges due, property damage, court cost, and associated cost." Appellant Jones had recently been evicted from the property. Appellant, who represented himself, moved to dismiss the case, arguing that he "never had a contract with Ayanna Brooks and [he] never used or occupied any house owned by [her] therefore there is no [controversy] unless she can show a contract[.]" Ayanna Brooks acknowledged these facts, but explained that she had filed the suit on behalf of her mother, Rose Brooks, who was currently living in Jamaica.

Because both parties agreed that Ayanna Brooks was not a party to the contract at issue, Judge Josey-Herring informed the Clerk of the Superior Court that the caption of the case and the pleadings should be amended to describe the plaintiff as "Ayanna Brooks as personal representative of Rose Brooks." Ayanna Brooks later submitted a power of attorney as well as a notarized statement from

her mother indicating that Rose Brooks has "given Ayanna Brooks authorization to act on [her] behalf and bring suit against Myran D. Jones II on matters pertaining to the property at 4315 7th St. NW Washington, DC 20011." Before trial, Judge Josey-Herring denied appellant's motion to dismiss for lack of standing, finding that Ayanna Brooks "has the authority and has had the authority at the time the case was filed to litigate on behalf of her mother in this case."

During trial, two witnesses testified. Ayanna Brooks testified in a narrative form for the plaintiff and was then cross-examined by Jones. She also introduced ten exhibits, including a copy of the lease between her mother and Jones. Jones's defense consisted entirely of his narrative testimony followed by cross-examination by Ayanna Brooks. He introduced twelve exhibits, including a copy of the lease. At the conclusion of the bench trial, Judge Josey-Herring found that appellant had breached his contract with Rose Brooks and ordered him to pay more than forty thousand dollars in back rent and interest. She also found that "[w]hile Ms. [Ayanna] Brooks was not the owner of the property, she acted on her mother's behalf pursuant to a valid power of attorney, which also provided Ms. Brooks with the legal authority to prosecute this action on her mother's behalf." (Footnote omitted.)

As the breach of contract dispute proceeded, the parties were also litigating a tenant petition that appellant had previously filed with the Rent Administrator of the Rental Accommodations and Conversion Division of the District of Columbia Department of Consumer and Regulatory Affairs. The matter had been referred to the Office of Administrative Hearings (OAH). Administrative Law Judge Jennifer M. Long held eight hearings and, on December 23, 2011, she found four violations of the Rental Housing Act of 1985 and ordered appellees to "refund" more than ten thousand dollars in interest and excess rent demanded.

Appellant had unsuccessfully requested that the breach of contract claim be stayed pending the outcome of his tenant petition. Although ALJ Long's order was issued on December 23, 2011, almost three months before Judge Josey-Herring issued her findings of fact, conclusions of law, and judgment on March 8, 2012, appellant did not bring it to the trial court's attention until attaching it to a letter to the court dated March 1, 2012. That letter, which was filed together with appellant's Application to Proceed Without Prepayment of Costs and a Motion to Vacate Judg[]ment, appears not to have been received by the clerk's office until March 14, 2012.

On April 9, 2012, Judge Josey-Herring granted the appellant leave to proceed without prepayment of costs and deemed the letter and motion to vacate judgment to have been filed as of the date of that order. She then denied the motion to vacate judgment without prejudice for failure to follow court rules. *See* Super. Ct. R. Civ. P. 12-I (a) (requiring consultation with other affected parties before filing motion, to determine whether they will consent to the relief sought). It appears from the docket that neither the motion nor ALJ Long's order was ever refiled by appellant. Thus, Judge Josey-Herring was never required to address the impact of Judge Long's order or the merits of appellant's motion to vacate judgment.

## II.    *Res Judicata*

Appellant argues that "[a]ll issues in this case" are *res judicata* due to the previously entered final order on his tenant petition. "*Res judicata* ('claim preclusion') precludes a party from relitigating an entire claim that has already reached a final judgment on the merits." *Short v. District of Columbia Dep't of Emp't Servs.*, 723 A.2d 845, 849 (D.C. 1998). "Generally, [*res judicata*] must be raised early in the life of a case[;] . . . [o]therwise the point of the doctrine—namely shielding parties from vexatious litigation and freeing judicial resources—

is not fulfilled." *Mitchell v. Gales*, 61 A.3d 678, 687 (D.C. 2013) (citations omitted). "[N]either of these objectives is advanced where a party raises a res judicata defense '[a]fter a final judgment has been entered'; thus 'it is most unlikely that a court could be persuaded to vacate the judgment so as to permit an assertion that could have been made earlier.'" *Id.* (citation omitted); *see Goldkind v. Snider Bros., Inc.*, 467 A.2d 468, 471 (D.C. 1983) ("a party who attempts to raise an affirmative defense for the first time on appeal will be barred").

*Res judicata* does not apply in the instant case.[1] First, that doctrine was raised for the first time on appeal and without the trial court ever addressing the issue. In addition, Judge Josey-Herring was not made aware of Judge Long's

---

[1] In contrast to *res judicata*, "[c]ollateral estoppel ('issue preclusion') precludes the relitigation of specific facts or issues that have actually been decided in a previous case when those issues are essential to the case." *Short*, 723 A.2d at 849. Some of the factual determinations made in the OAH proceedings are similar to those litigated in the breach of contract case. Appellant argues that when he "notified the Superior Court that these matters before it have already been litigated and [he] was awaiting findings of the preceding Judge over the case, that information was disregarded." It is not clear whether appellant is making a claim of *res judicata* or collateral estoppel. Assuming appellant intended to raise a collateral estoppel claim before us, there is no indication that this issue was ever raised below. *See Albertie v. Louis & Alexander Corp.*, 646 A.2d 1001, 1006 (D.C. 1994) ("Where an issue is raised for the first time on appeal, we will reverse only 'where it is apparent from the face of the record that a miscarriage of justice has occurred.'" Because appellant does not direct us to specific factual determinations (rather than "all issues") that he believes were entitled to preclusive effect, and the two orders are not so fundamentally inconsistent as to cause a miscarriage of justice, any collateral estoppel claim by appellant fails.

ruling before she issued her own order and judgment. And, because appellant's filing did not follow the trial court's procedural rules, Judge Long's opinion was never properly presented to the Superior Court.

Moreover, appellee's complaint presented a single breach of contract claim. The proceedings commenced by appellant's tenant petition primarily focus on whether appellees had unlawfully raised his rent. Opposing parties could, as happened here, prevail on their respective claims without the judgments being inconsistent. Thus, Judge Josey-Herring's finding that appellant had breached his contract to pay rent was not precluded by ALJ Long's finding that appellee had improperly demanded additional rent from appellant.

This is not a unique situation. We previously affirmed a decision of the Rental Housing Commission ordering a "rent refund" of amounts overcharged but never collected. *Kapusta v. District of Columbia Rental Hous. Comm'n*, 704 A.2d 286, 286 (D.C. 1997) (affirming order to "refund" $2004 for nine months of rental overage demands despite tenant having only paid $410 for a single month's rent). In that case, we held that the petitioner "was not without remedy for the rent properly owed to him that the tenant had failed to pay" because the proper "remedy lay through an appropriate action in the Civil Division of the Superior Court." *Id.*

at 287-88. Thus, rather than one proceeding having a preclusive effect on the other, the two orders are compatible; the administrative action determines what, if anything, the landlord owes the tenant and the Superior Court action determines what, if anything, the tenant owes the landlord. That is precisely what happened here. Because *res judicata* was not raised as a defense at any time before trial and it would not, in any event, bar any of the claims that were litigated below, we affirm.

## III.    Power of Attorney

Appellant contends that Ayanna Brooks lacked standing to act on behalf of her mother with respect to the breach of contract action against him. He is mistaken. Despite some initial stumbles, Ayanna Brooks acted within the authority granted to her by a power of attorney. *See* D.C. Code § 21-2103 (4) ("By executing a statutory power of attorney . . . the principal . . . empowers the agent, for that subject to . . . [p]rosecute, defend, submit to arbitration, settle, and propose or accept a compromise with respect to a claim existing in favor of or against the principal or intervene in litigation relating to the claim[.]"); D.C. Code § 21-2112 (1) ("In a statutory power of attorney the language with respect to claims and litigation empowers the agent to . . . [a]ssert and prosecute before a court . . . a

claim [or] a cause of action . . . including suits to recover property or other thing of value[.]").

This power of attorney is not clearly identified in the record,[2] but the trial court found that it was "a valid power of attorney," and appellant has not demonstrated that this conclusion is clearly erroneous or contrary to law. Moreover, the court had received a notarized statement from Rose Brooks authorizing Ayanna Brooks to act on her behalf in bringing this suit against appellant Jones. Thus, as an attorney in fact for Rose Brooks, Ayanna Brooks had the lawful authority to appear in her mother's stead in a breach of contract claim against appellant for rent due.

## IV.   Amended Caption

"Every action [in the Superior Court of the District of Columbia] shall be prosecuted in the name of the real party in interest." Super. Ct. R. Civ. P. 17 (a). However, our rules allow for liberal modification of the pleadings to ensure that the action is prosecuted in the name of the correct party:

---

[2] Although the power of attorney was marked as Plaintiff's Exhibit 12, the court noted that it was not introduced into evidence.

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Super. Ct. R. Civ. P. 17 (a); *see Duckett v. District of Columbia*, 654 A.2d 1288, 1290 (D.C. 1995) ("A reading of this provision leads to the conclusion that an action should not be dismissed without a fair opportunity to substitute the real party in interest."). Although the original complaint was filed in the name of Ayanna Brooks, substitution was proper once the trial court learned that Rose Brooks was the real party in interest and received documentation that Ayanna Brooks had the authority to prosecute the claim on her mother's behalf. Because the trial court was presented with a valid power of attorney that predated the filing of the complaint as well as a notarized letter from Rose Brooks ratifying the action on her behalf, modification of the caption was proper.

Appellant further contends that he was prejudiced by the denial of his "request for additional time to rally a defense in light of the Plaintiff change." "[T]he grant or denial of a continuance rests within the sound discretion of a trial

judge, to whom we accord a wide latitude." *Fischer v. Estate of Flax*, 816 A.2d 1, 8 (D.C. 2003) (internal quotation marks omitted).

Appellant has not demonstrated an abuse of discretion here. First, it is not clear from the record that he requested a continuance. Second, even assuming there was such a request, appellant has not shown why he needed more time to "rally a defense." After the caption was amended, appellant faced the same claim based on the same lease and the same facts, with which he was well acquainted. Furthermore, the trial court amended the caption on October 5, 2011. A November 2, 2011, trial date was continued because Ayanna Brooks had not arrived with sufficient documentation to demonstrate that she was an attorney-in-fact for Rose Brooks. Thus, when both parties arrived for trial on November 22, 2011, appellant had been aware for more than six weeks that, if his motion to dismiss was denied, the trial would go forward with Rose Brooks as the plaintiff. This argument presents no ground for reversal.

### V.    The Unauthorized Practice of Law

We have not previously addressed whether a power of attorney grants an attorney-in-fact (who is not a member of the bar) the authority to appear in court

on behalf of a principal. As discussed above, the District of Columbia Code empowers an attorney-in-fact to "[p]rosecute, defend, submit to arbitration, settle, and propose or accept a compromise with respect to a claim existing in favor of or against the principal or intervene in litigation relating to the claim[.]" D.C. Code § 21-2103 (4). If read too literally, this language appears to conflict with the principle that "one who is not a licensed attorney cannot prosecute or defend a claim on behalf of another." *Corto v. Nat'l Scenery Studios*, 705 A.2d 615, 623 (D.C. 1997); *see* D.C. App. R. 49 (a) (forbidding the unauthorized practice of law); *see also* Super. Ct. R. Civ. P. 101 (a)(2) ("No person other than one authorized by this Rule shall be permitted to appear in this Court in a representative capacity for any purpose other than securing a continuance.").

Courts addressing the apparent dissonance between the language of power of attorney statutes and the prohibition against the unauthorized practice of law have consistently held that a valid power of attorney does not provide the "right to practice law . . . without meeting the educational, examination, and ethical standards" required by that jurisdiction's bar. *Ross v. Chakrabarti*, 5 A.3d 135, 139-41 (Md. App. 2010); *see Haynes v. Jackson*, 744 A.2d 1050, 1054 (Me. 2000) (dismissing an appeal because "enactment of [a] broad power of attorney statute does not change the strict limitations on the unauthorized practice of law"); *In re*

*Riebel*, 625 N.W.2d 480, 482 (Minn. 2001) ("We do not construe the [statutory] authorizations . . . for an attorney-in-fact to assert and prosecute claims to empower the attorney-in-fact to appear as the attorney-at-law in asserting and prosecuting those claims."). A contrary interpretation would provide "a very easy means of circumventing the prohibition against the unauthorized practice of law" and would produce "an absurd result." *Id.* The Minnesota Supreme Court has explained that "[t]he more reasonable interpretation of the statutory language is that a power of attorney authorizes the attorney-in-fact to act on behalf of the principal as the client in an attorney-client relationship." *Id.* We agree.

"The great weight of authority renders it almost universally accepted that the highest court in the jurisdiction is imbued with the inherent authority to define, regulate, and control the practice of law in that jurisdiction." *Brookens v. Comm. on Unauthorized Practice of Law*, 538 A.2d 1120, 1125 (D.C. 1988). Exercising this authority, this court has promulgated Rule 49, which provides that "[n]o person shall engage in the practice of law in the District of Columbia or in any manner hold out as authorized or competent to practice law in the District of Columbia unless enrolled as an active member of the District of Columbia Bar, except as otherwise permitted by these Rules." D.C. App. R. 49 (a). The practice of law is defined to include "[a]ppearing or acting as an attorney in any tribunal,"

D.C. App. R. 49 (b)(2)(C), and "[p]reparing any claims, demands or pleadings of any kind, or any written documents containing legal argument or interpretation of law, for filing in any court, administrative agency or other tribunal."  D.C. App. R. 49 (b)(2)(D).  The commentary to Rule 49 (a) explains that "[w]hile one has a right to represent oneself, there is no right to represent or advise another as a lawyer."

Although a valid power of attorney authorized Ayanna Brooks to act on her mother's behalf as the client in an attorney-client relationship, her appearing in court in a representative capacity likely violated both our rule and the Superior Court's rule prohibiting the unauthorized practice of law.  *See* D.C. App. R. 49 (a); Super. Ct. R. Civ. P. 101 (a)(2).  However, although appellant challenged the "standing" of Ayanna Brooks to pursue this litigation, it appears that the distinct issue of unauthorized practice was not raised in or considered by the trial court.  At this late stage of the litigation, there is no absolute requirement that the judgment be vacated and the case dismissed.

"As a general rule in other jurisdictions, '[p]roceedings in a suit by a person not entitled to practice are a nullity, and if appropriate steps are timely taken the suit may be dismissed . . . .  If the cause has proceeded to judgment, the judgment

is void and will be reversed.'" *Turkey Point Prop. Owners' Ass'n v. Anderson*, 666 A.2d 904, 908-09 (Md. App. 1995) (quoting 7 C.J.S. *Attorney & Client* § 31 at 869 (1980)). Nevertheless, "[i]t is acknowledged that 'the dismissal of a suit for such a cause is a drastic remedy and may not be required in all cases.'" *Id.* at 909 (quoting 7 C.J.S. *Attorney & Client* § 31 at 869). It is for this reason that appellate courts decline to dismiss appeals or to declare judgments void where "[t]o do so would not serve the interests of justice." *First Wholesale Cleaners v. Donegal Mut. Ins. Co.*, 792 A.2d 325, 334 (Md. App. 2002). "[S]uch discretion should be exercised cautiously and used sparingly, in light of the longstanding prohibition of lay persons engaging in the unauthorized practice of law[.]" *Id.*

Our own decisions have demonstrated this flexibility. *See Weinstein v. Calabrese*, 439 A.2d 1091, 1092 & n.4 (D.C. 1981) ("Appellant was not prejudiced by the representation of appellees at trial by court-appointed student attorneys [who may have been engaged in the unauthorized practice of law]."; trial court did not abuse its discretion by denying motion to dismiss and considering the merits of the claim) (per Mack, J., with Newman, C.J., concurring in the result only); *Shamey v. Hickey*, 433 A.2d 1111, 1113 (D.C. 1981) (remanding to the trial court with instructions to dismiss the complaint; "As assignee of his corporation's claim, appellee, suing in his own name, was collecting for his corporation" and

was engaged in the unauthorized practice of law); *Kelly Adjustment Co. v. Boyd*, 342 A.2d 361, 362 n.2 (D.C. 1975) (declining to apply retroactively decision which held that collection agencies were engaged in the unauthorized practice of law; "there is no compelling public policy consideration working here against allowing enforcement of these pre-*Marshall* judgments") (Gallagher, J.); *id*. at 363 (Kern, J., concurring) ("I find no authority which persuades me that a judgment obtained through the unauthorized practice of law under the circumstances disclosed here is so utterly flawed that it must as a matter of law be voided."); *J. H. Marshall & Assocs. v. Burleson*, 313 A.2d 587, 592 (D.C. 1973) (collection agency was engaged in the unauthorized practice of law; "[W]hen it is asserted . . . that one is engaging in the unauthorized practice of law before the court, it has [the] authority to consider the question and to dismiss plaintiff's suit[.]") (per Yeagley, J., with Kelly, J., concurring in the result and Hood, C.J. (retired) concurring in part and dissenting in part). When the issue has been timely raised, a trial court should not permit the unauthorized practice of law, but appellant's belated claim does not require us to declare the judgment void.

Although the complaint in this case was improperly filed by Ayanna Brooks on her own behalf, Rose Brooks subsequently ratified it and placed it validly before the trial court. Furthermore, because Ayanna Brooks had authority

to "prosecute" this complaint as the plaintiff/client, and testified from personal knowledge, her appearance in court did not provide her mother with any unfair advantage or cause any evident prejudice to appellant. This was particularly true here, where the bench trial involved only two witnesses testifying mainly in a narrative fashion. Although Rose Brooks was spared the expense of hiring a lawyer, it is hard to see how appellant would have benefitted if a skilled attorney faced him in this litigation. Moreover, we see no evidence to indicate that Ayanna Brooks has made it a practice to represent her mother or others pursuant to a power of attorney. For these reasons, and because appellant Jones has presented no reason to think that the trial was unfair, voiding the judgment would not serve the interests of justice.[3]

## VI. Conclusion

---

[3] Appellant Jones properly proceeded *pro se* before this court. *See* D.C. App. R. 42 (c) ("These rules do not prevent a person who is without counsel from prosecuting or defending an appeal in which that person is a party."). Thus, his appeal is properly before us. However, Ayanna Brooks is not a party to this appeal and she may not act in a representative capacity before this court. We therefore strike the brief she has filed in this case. *See Craig v. Alcoholic Beverage Control Bd.*, 721 A.2d 584, 585 n.1 (D.C. 1998); *Snow v. Capitol Terrace, Inc.*, 602 A.2d 121, 128 n.9 (D.C. 1992). Ayanna Brooks's brief consisted primarily of attached documents. Because all relevant documents she attached can be found elsewhere in the record, our striking her brief results in the elimination of her advocacy while ultimately not impairing our ability to review relevant documents.

The judgment of the Superior Court is hereby

*Affirmed.*