138 Nev., Advance Opinion 63

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

DONALD DOUGLAS EBY,
Appellant,
vs.
JOHNSTON LAW OFFICE, P.C.; BRAD
M. JOHNSTON; AND LEANN E.
SCHUMANN,
Respondents.

No. 83299-COA

FILED

SEP 08 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK



Appeal from a district court order striking a second amended complaint and dismissing a tort action with prejudice. Third Judicial District Court, Lyon County; John Schlegelmilch, Judge.

*Affirmed in part, reversed in part, and remanded.*

Donald Douglas Eby, Gardnerville,
in Pro Se.

Santoro Whitmire, Ltd., and James E. Whitmire, Las Vegas,
for Respondents.

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., TAO and BULLA, JJ.

*OPINION*

PER CURIAM:

In this opinion, we consider the extent to which a nonlawyer agent who is granted authority over claims and litigation under a power of

attorney pursuant to Nevada's Uniform Power of Attorney Act, as codified in NRS Chapter 162A, may litigate a claim belonging to the principal. Construing the statutory scheme in a manner consistent with long-standing Nevada law prohibiting the unauthorized practice of law, we hold that a nonlawyer agent operating under a power of attorney concerning claims and litigation may not litigate an action in pro se in place of the principal or otherwise engage in the practice of law on the principal's behalf; rather, our statutes generally grant such an agent the same limited authority a client has over claims and litigation in an attorney-client relationship.

Because the district court correctly determined below that appellant's nonlawyer agent under a power of attorney was engaged in the unauthorized practice of law, we affirm its decision to strike the second amended complaint prepared by the agent. But because the district court proceeded to dismiss appellant's last remaining claim in the action with prejudice without conducting the requisite analysis for imposing case-concluding sanctions, we reverse that dismissal and remand this matter to the district court for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Appellant Donald Douglas Eby was convicted in April 2018 of battery causing substantial bodily harm and sentenced to a term of imprisonment for 12-48 months. Shortly after Eby's conviction, the victim of the crime filed a tort action against him in connection with the battery. Eby retained respondents Johnston Law Office, P.C.; Brad M. Johnston; and LeAnn E. Schumann to defend against the suit, and he executed a power of attorney giving them authority to settle the case, which they ultimately did in October 2018 in the amount of $500,000.

In September 2020, Eby filed the underlying action in pro se against respondents, asserting various causes of action, including legal

malpractice. Shortly thereafter, he filed a first amended complaint, adding an additional claim and more detailed allegations. He essentially claimed that respondents could have obtained a more favorable resolution of the case had they properly advised him on the law and proceeded with litigation. He also vaguely alleged that respondents forced him to sign the power of attorney granting them authority to settle. These first two pleadings were signed only in Eby's name.

Respondents filed a motion to dismiss the first amended complaint, arguing that Eby failed to state a claim under NRCP 12(b)(5). Eby opposed the motion, again in papers signed only in his name. However, prior to the scheduled hearing on the motion to dismiss, Eby filed a motion requesting that the court permit Theodore Stevens, an inmate serving a life sentence at Lovelock Correctional Center, to appear at the hearing on Eby's behalf by audiovisual means. In the motion, Eby stated that, because he is not a lawyer, has no legal training, and is of limited education, he had been relying on Stevens's assistance for preparing the legal filings in the case. Eby further stated that he would not be able to argue his case alone before the court and that he therefore required Stevens's assistance at the hearing. The motion also included a signed declaration from Eby attesting to these representations. The district court issued a written order denying the motion, identifying Stevens as a "jailhouse lawyer" who "is not a licensed attorney in the State of Nevada" and therefore "cannot represent [Eby]," as "[a]ny representation would be the unauthorized practice of law."

The district court proceeded to hold the hearing on respondents' motion to dismiss, at which Eby appeared on his own behalf. Following argument by the parties on the motion to dismiss and respondents' oral motion for a more definite statement in the alternative, the court orally

ruled that it was dismissing the first amended complaint on the merits in its entirety except to the extent Eby based his malpractice claim on the allegation that respondents forced him to sign the power of attorney concerning settlement. The court explained that it was granting Eby leave to amend to provide a more definite statement on the power-of-attorney allegation and that it would dismiss the action without prejudice if Eby failed to file a second amended complaint within 30 days. The court further admonished Eby that he would either need to hire an attorney or prepare the pleading himself without the assistance of Stevens. Eby confirmed that he understood the court's ruling, and he at no point disputed the representations in his earlier motion that Stevens had been assisting in the preparation of pleadings and papers on his behalf.

After the hearing, the district court issued a written order dismissing the first amended complaint with prejudice under NRCP 12(b)(5), except for the malpractice claim, for which it was granting Eby leave to amend to provide a more definite statement, thereby leaving the merits of that claim unresolved.[1] The written order reflected the court's oral ruling from the hearing in all respects except that it stated the action would be dismissed with prejudice rather than without if Eby failed to properly file an amended complaint within 30 days. Eby—through Stevens, in violation of the court's admonitions—filed an objection to the content of the written order, but he did not challenge the extent to which the order provided that dismissal for failure to comply with it would be with prejudice.

---

[1]On appeal, Eby does not challenge the district court's decision to dismiss all claims other than the malpractice claim with prejudice under NRCP 12(b)(5). Thus, the issue is not before us. *See Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011) (providing that issues not raised on appeal are deemed waived).

In light of what followed, the district court did not ultimately rule on this objection.

Eby, again through Stevens, proceeded to file a second amended complaint on the last day of the 30-day period. The pleading purported to substitute Stevens into the action as plaintiff in Eby's place, provided that Stevens was proceeding on Eby's behalf as his attorney-in-fact under a power of attorney pursuant to NRS 162A.470 and NRS 162A.560, and was signed by Stevens in that capacity. The district court, before any response to the pleading was filed and without holding a hearing or addressing the statutes relied upon by Eby/Stevens, entered a written order concluding that Stevens was engaged in the unauthorized practice of law, striking all documents authored by Stevens as fugitive documents—including the second amended complaint—and dismissing the action with prejudice for failure to comply with the court's prior order. This appeal followed.

## ANALYSIS

On appeal, Eby primarily contends that Stevens had the authority to represent him and litigate the underlying matter on his behalf by virtue of the limited power of attorney he executed giving Stevens such authority. Specifically, Eby contends that NRS 162A.470 and NRS 162A.560 expressly allow for a principal to grant such authority to an attorney-in-fact under a power of attorney.[2] Eby also challenges the form

---

[2]Eby likewise contends that Stevens could bring the action himself and/or on Eby's behalf under NRCP 17. See NRCP 17(a)(1)(G) (identifying "a party authorized by statute" as one who "may sue in [his or her] own name[ ] without joining the person for whose benefit the action is brought"); NRCP 17(b)(1) (providing that "[c]apacity to sue . . . for an individual, including one acting in a representative capacity, [is determined] by the law of this state"). As this argument is wholly dependent on Eby's contention

of the district court's dismissal, contending that it was inconsistent with the court's oral ruling at the hearing on respondents' motion to dismiss, where the court stated that it would dismiss the action *without* prejudice if Eby failed to properly file an amended complaint within 30 days. We address each argument in turn.

*An individual may not authorize a nonlawyer to litigate in pro se or practice law on his or her behalf by virtue of a power of attorney*

Because resolving the issue of whether Stevens was permitted to litigate the underlying matter on Eby's behalf by virtue of the power of attorney requires interpreting statutes and court rules, our review on this point is de novo. *Marquis & Aurbach v. Eighth Judicial Dist. Court*, 122 Nev. 1147, 1156, 146 P.3d 1130, 1136 (2006).

NRS Chapter 162A governs powers of attorney for financial matters and healthcare decisions. A "[p]ower of attorney" is defined as "a writing or other record that grants authority to an agent to act in the place of the principal, whether or not the term 'power of attorney' is used."[3] NRS 162A.090. Nevada's Uniform Power of Attorney Act (UPOAA), enacted by the Legislature in 2009, *see* 2009 Nev. Stat., ch. 64, §§ 1-56, at 174-98, is codified within NRS Chapter 162A and sets forth the scope and operation of powers of attorney for financial matters.[4] *See* NRS 162A.200-.660. As

that Stevens was authorized to litigate the underlying case under NRS Chapter 162A, we reject it for the reasons discussed herein.

[3]NRS 162A.030 defines "[a]gent" as "a person granted authority to act for a principal under a power of attorney, whether denominated an agent, attorney-in-fact or otherwise."

[4]At the same time, the Legislature enacted separate provisions concerning powers of attorney for healthcare decisions. *See* 2009 Nev. Stat., ch. 64, §§ 57-73, at 198-207.

relevant to this appeal, NRS 162A.470, entitled "[c]onstruction of authority generally," provides as follows:

> Except as otherwise provided in the power of attorney, by executing a power of attorney that incorporates by reference a subject described in NRS 162A.200 to 162A.660, inclusive, . . . a principal authorizes the agent to . . . [d]emand, receive and obtain, *by litigation* or otherwise, money or another thing of value to which the principal is, may become or claims to be entitled . . . .

NRS 162A.470(1) (emphasis added). And one of the "subject[s] described in NRS 162A.200 to 162A.660" is that found in NRS 162A.560, entitled "[c]laims and litigation." Under that statute, unless otherwise stated, if a power of attorney grants an agent "general authority with respect to claims and litigation," the agent may "[a]ssert and maintain before a court . . . a claim, claim for relief, [or] cause of action, . . . including an action to recover . . . damages sustained by the principal." NRS 162A.560(1).

NRS 162A.560 proceeds to enumerate various other powers granted to such an agent, including that the agent may "[b]ring an action to determine adverse claims or intervene or otherwise participate in litigation;" "[s]ubmit to alternative dispute resolution, settle, and propose or accept a compromise;" and "appear for the principal, . . . verify pleadings, seek appellate review, . . . contract and pay for the preparation and printing of records and briefs, and receive, execute and file or deliver [any] instrument in connection with the prosecution, settlement or defense of a claim or litigation." NRS 162A.560(2), (5), (6). Thus, the plain language of the UPOAA allows a principal to grant considerable authority over the litigation of his or her own causes of action to an agent under a power of attorney.

However, it is well established that it is unlawful for a person to practice law in Nevada unless that person is an "active member of the State Bar of Nevada or otherwise authorized to practice law in this state pursuant to the rules of the Supreme Court." NRS 7.285(1)(a);[5] *see* SCR 77 ("No person may practice law as an officer of the courts in this state who is not an active member of the state bar, unless authorized to practice subject to [other Supreme Court Rules]."). And our supreme court has previously noted that, "[a]lthough an individual is entitled to represent himself or herself in the district court, no rule or statute permits a non-attorney to represent any other person . . . in the district courts or in [the appellate] court[s]." *Guerin v. Guerin*, 116 Nev. 210, 214, 993 P.2d 1256, 1258 (2000) (citation omitted) (citing *Salman v. Newell*, 110 Nev. 1333, 1336, 885 P.2d 607, 608 (1994)). The underlying purpose of this prohibition on the unauthorized practice of law is "to ensure that the public is served by those who have demonstrated training and competence and who are subject to regulation and discipline." *In re Discipline of Lerner*, 124 Nev. 1232, 1237, 197 P.3d 1067, 1072 (2008).

In *Lerner*, the supreme court held "that what constitutes the practice of law must be determined on a case-by-case basis, bearing in mind the overarching principle that the practice of law is involved when the activity requires the exercise of judgment in applying general legal knowledge to a client's specific problem." *Id.* at 1234, 197 P.3d at 1069. And here, Eby does not substantially dispute that Stevens—by advising Eby in connection with the underlying action and preparing and submitting filings therein on his behalf—was engaged in conduct that generally constitutes

---

[5]Under NRS 7.285(2), a person who engages in the unauthorized practice of law may be charged with a criminal offense.

practicing law. Nor could he reasonably dispute this point, as Stevens's actions in litigating the underlying case clearly amounted to such practice. *See id.* at 1241, 197 P.3d at 1074 (recognizing that, even short of litigating an action in court, the "exercise of professional judgment" and "evaluating a . . . claim, advising clients of the claim's merits, and negotiating the claim" constitute the practice of law); 7 Am. Jur. 2d *Attorneys at Law* § 1 (2017) ("[The practice of law] embraces the preparation of pleadings and other papers incident to actions . . . ."). Instead, Eby seems to contend that the UPOAA allows a nonlawyer agent with a valid power of attorney concerning claims and litigation to essentially step into the shoes of the principal and litigate an action as if the principal were proceeding in pro se, or that it simply authorizes such an agent to engage in the practice of law on the principal's behalf. We disagree.

Although our appellate courts have not specifically addressed this issue, the supreme court considered a similar issue in *Martinez v. Eighth Judicial District Court*, 102 Nev. 561, 729 P.2d 487 (1986). In that original writ proceeding, the court rejected the petitioner's argument that a nonattorney agent could represent him in the district court under a statute providing that a person claiming unemployment benefits could "be represented [before a court] by counsel or other duly authorized agent." *Id.* at 562, 729 P.2d at 488 (emphasis omitted) (quoting NRS 612.705(2) (1967)). The court summarily determined that the statute did not operate in the manner suggested, as "only a licensed attorney may be duly authorized to represent a client" in a court of law. *Id.* (citing SCR 77 and NRS 7.285). However, unlike the power-of-attorney statutes at issue in this case, the statute addressed in *Martinez* did not purport to convey any sort of specific authority concerning claims and litigation to an agent.

With respect to the power-of-attorney statutes at issue here, the only authority citing them is an unpublished order of dismissal from the United States District Court for the District of Nevada. *See Handley v. Bank of Am., N.A.*, No. 2:10-cv-01644-RLH-PAL, 2010 WL 4607014, at *2 (D. Nev. Nov. 4, 2010). There, as here, a nonlawyer acting pursuant to a power of attorney represented the plaintiff in a civil action. *Id.* at *1. The defendants filed a motion to dismiss the complaint, which the court granted, concluding summarily that "[t]he power of attorney defined in NRS Chapter 162A does not circumvent NRS 7.285's prohibition on the unauthorized practice of law." *Id.* at *2. The court further noted that while "[the agent] may be able to secure proper legal representation for Plaintiff pursuant to Plaintiff's power of attorney," the agent could not "represent[ ] Plaintiff as a so called attorney-in-fact." *Id.* (citing NRS 162A.470). Although the analysis in its written order was cursory, for the reasons set forth below, we agree with the *Handley* court's decision.

Courts in other jurisdictions have addressed whether power-of-attorney statutes like Nevada's can be used to circumvent the general prohibition on the practice of law by nonlawyers in greater depth, including the California Court of Appeal in *Drake v. Superior Court*, 26 Cal. Rptr. 2d 829 (Ct. App. 1994).[6] The *Drake* court considered "whether the long-standing, statutory prohibition against the practice of law by persons not admitted to the Bar has been abrogated by the more recently adopted

---

[6]*See In re Foster*, Bk. No. 11-17709-WRL, 2012 WL 6554718, at *4, *5 (B.A.P. 9th Cir. Dec. 14, 2012) (noting that "[c]ase law is rather sparse on the issue of whether an attorney-in-fact can sign a complaint or otherwise appear on behalf of her principal" and that *Drake* is "[t]he leading California case on this issue").

Uniform Statutory Form Power of Attorney Act."[7] *Id.* at 830. Specifically, the court evaluated the broad powers conferred on an attorney-in-fact under Cal. Civ. Code § 2494 (West 1993),[8] *id.*, a provision concerning claims and litigation that was materially similar to NRS 162A.560. In *Drake*, Terry Drake obtained a form power of attorney from two other individuals giving him general authority over claims and litigation, which he used in an attempt to appear in legal proceedings on their behalf. 26 Cal. Rptr. 2d at 831. When the lower court rejected these attempts, Drake petitioned the court of appeal for a writ of mandate directing the lower court to allow him to appear. *Id.*

The court of appeal denied Drake's petition, concluding that, "despite [its] broad language, the Power of Attorney Act does not permit attorneys in fact to engage in legal activities clothed only with a power of attorney." *Id.* In so doing, the court first noted that, while principals under a power of attorney may appear in pro se, an agent may not do so on their behalf, as, "[b]y definition, one cannot appear in 'propria' persona for another person."[9] *Id.*

---

[7]California's power-of-attorney law was a precursor to the current uniform act. *See* Unif. Power of Attorney Act § 404(2) (Unif. Law Comm'n 2006) (repealing the Uniform Statutory Form Power of Attorney Act). Nevertheless, its relevant provisions are sufficiently analogous to the UPOAA as enacted in Nevada to inform our analysis here.

[8]This provision was later recodified without change as the current Cal. Prob. Code § 4459 (West 2009). *See* 1994 Cal. Stat., ch. 307, §§ 9, 16, at 1982-83, 2010-11.

[9]Appearing "in pro se" is synonymous with appearing "in propria persona" and means to appear "[f]or oneself; on one's own behalf; without a lawyer." *Pro Se*, *Black's Law Dictionary* (11th ed. 2019).

The court went on to address Drake's contention that he could essentially practice law on behalf of a principal under a power of attorney that "expressly authorizes him to '[a]ssert and prosecute before a court . . . a claim [or] cause of action,' . . . '[b]ring an action to determine adverse claims, intervene in litigation and act as amicus curiae,' . . . and 'appear for [his principals] . . . in connection with the prosecution, settlement or defense of a claim or litigation.'" *Id.* at 831-32 (alterations in original) (quoting Cal. Civ. Code § 2494(a), (b), (e)). In rejecting this argument, the court determined that accepting Drake's construction of the power-of-attorney statutes would reach the absurd result of "sanction[ing] criminal conduct" by allowing for "the unauthorized practice of law." *Id.* at 832. The court relied on long-standing California law allowing for persons to represent their own interests in court but prohibiting nonlawyers from doing so on behalf of others, and it recognized the general legal distinction between an attorney-in-fact under a power of attorney on the one hand, and an attorney-at-law on the other. *Id.* (providing "that a power of attorney is not a vehicle which authorizes an attorney in fact to act as an attorney at law," as holding otherwise would "relegate[ the prohibition on the unauthorized practice of law] to contempt by any layman who secured from his principal an ordinary power of attorney, for the purpose of representing him in pending litigation" (internal quotation marks omitted)); *see Attorney, Black's Law Dictionary* (11th ed. 2019) (distinguishing between an "attorney-in-fact" as an agent "designated to transact business for another" and an "attorney-at-law" as "[s]omeone who practices law").

The rationale of the *Drake* court is persuasive, and we adopt a similar approach in concluding that a nonlawyer agent with a power of attorney concerning claims and litigation is not authorized to appear in a

pro-se capacity in place of the principal or practice law on the principal's behalf. In line with *Drake*, we conclude that Stevens, by definition, cannot appear in pro se on Eby's behalf; only Eby may do so. *See* 26 Cal. Rptr. 2d at 831; *see also* SCR 44. Moreover, the Nevada provisions relied upon by Eby in arguing that Stevens could advocate for him in a representative capacity are sufficiently similar to the California statute addressed in *Drake* that the *Drake* court's reasoning applies with equal force here. *Compare* 26 Cal. Rptr. 2d at 831-32 (discussing the former Cal. Civ. Code § 2494), *with* NRS 162A.470, .560 (granting agents similar authority under a power of attorney concerning claims and litigation). For example, both states' statutes expressly authorize an agent to, among other things, "[a]ssert . . . before a court . . . a claim, claim for relief, [or] cause of action . . . to recover . . . damages sustained by the principal," "[b]ring an action to determine adverse claims," and "appear for the principal" with respect to claims and litigation. *Compare* NRS 162A.560(1)-(2), (6), *with* Cal. Prob. Code § 4459(a)-(b), (e) (West 2009).

Like the *Drake* court noted in its application of California's materially similar law, we find no support in the UPOAA for the notion that the Nevada Legislature intended to supplant well-established law prohibiting the unauthorized practice of law. *See* NRS 162A.380 ("Unless displaced by a provision of NRS 162A.200 to 162A.660, inclusive, the principles of law and equity supplement NRS 162A.200 to 162A.660, inclusive."); *In re CityCenter Constr. & Lien Master Litig.*, 129 Nev. 669, 677, 310 P.3d 574, 580 (2013) ("Whenever possible, we will interpret a rule or statute in harmony with other rules or statutes." (alteration and internal quotation marks omitted)); *cf. Drake*, 26 Cal. Rptr. 2d at 832 ("[T]he authority of attorneys in fact under section 2494 is restricted—it is subject

to conditions of fact and law that exist outside this chapter." (internal quotation marks omitted)). Indeed, interpreting the statutes in the manner Eby suggests would reach the absurd result of "sanction[ing] criminal conduct" by allowing nonlawyers to engage in "the unauthorized practice of law." *Drake*, 26 Cal. Rptr. 2d at 832; *see also* NRS 7.285; *Platte River Ins. Co. v. Jackson*, 137 Nev., Adv. Op. 82, 500 P.3d 1257, 1262 (2021) ("We strive to the extent possible to interpret a statute in a matter that avoids unreasonable or absurd results unintended by the Legislature." (alteration and internal quotation marks omitted)). And although the UPOAA provides a principal the ability to grant broad authority over claims and litigation to an agent, the powers enumerated in the statutes do not specifically contemplate the practice of law and instead indicate that such authority is excluded.[10]

For example, NRS 162A.560(6) provides that an agent may "verify pleadings" and "contract and pay for the preparation . . . of records and briefs." But it does not provide that the agent may actually prepare such documents himself or argue in support of them in court. *See Doe Dancer I v. La Fuente, Inc.*, 137 Nev. 20, 34, 481 P.3d 860, 873 (2021) (acknowledging "the canon of construction '*expressio unius est exclusio alterius*,'" meaning "the expression of one thing is the exclusion of another" (internal quotation marks omitted)); *see also Drake*, 26 Cal. Rptr. 2d at 832 (employing similar reasoning under identical statutory language). And the UPOAA expressly grants an agent the ability to "[d]o any *lawful* act with

---

[10]An agent who is also a duly licensed attorney would of course have the authority to practice law on the principal's behalf, but it would be the agent's law license—not the power of attorney—that would give rise to such authority.

respect to the subject [of the power of attorney]," NRS 162A.470(10) (emphasis added), which of course does not include the *unlawful* practice of law.[11] *See Drake*, 26 Cal. Rptr. 2d at 833 (applying a materially similar provision of the California statute in concluding that a nonlawyer agent may not engage in the unauthorized practice of law).

Courts in multiple other jurisdictions have addressed this issue and reached similar conclusions. *See, e.g., Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997); *Weber v. Garza*, 570 F.2d 511, 514 (5th Cir. 1978); *Christiansen v. Melinda*, 857 P.2d 345, 346-49 (Alaska 1993); *Jones v. Brooks*, 97 A.3d 97, 103-04 (D.C. 2014); *In re Conservatorship of Riebel*, 625 N.W.2d 480, 481-83 (Minn. 2001); *Kohlman v. W. Pa. Hosp.*, 652 A.2d 849, 850-52 (Pa. Super. Ct. 1994). Thus, consistent with the foregoing, and contrary to Eby's reading of the statutes, we conclude the UPOAA is better understood as allowing a principal to grant an agent the authority over claims and litigation the principal would have as a client in an attorney-client relationship. *See Christiansen*, 857 P.2d at 349 (concluding that the "powers [enumerated in Alaska's similar power-of-attorney law] are best characterized as authorizing the agent to act *as* the client in an attorney-client relationship"); *accord Jones*, 97 A.3d at 103; *Riebel*, 625

_____

[11]While the language in NRS 162A.560(6) providing that an agent may "appear for the principal" is seemingly broad enough to allow a nonlawyer agent to do what Stevens did in this case, in light of our analysis herein, we construe NRS 162A.560 to mean that an agent may appear for the principal in any manner otherwise consistent with law. This does not include appearing in a purportedly pro-se capacity on behalf of the principal or as an unlicensed legal practitioner but may include appearing through counsel or testifying on the principal's behalf. *Compare* NRS 162A.560(4) (providing that an agent may "consent to examination and bind the principal in litigation"), *with* Cal. Prob. Code § 4459(c)(2) (providing an agent similar authority).

N.W.2d at 482; *Kohlman*, 652 A.2d at 852. On this point, we note that the powers set forth in NRS 162A.560, which generally encompass bringing an action, submitting to alternative dispute resolution, seeking appellate review, and settling a claim or otherwise concluding an action or satisfying a judgment, are consistent with those decisions that are reserved to a client under the Nevada Rules of Professional Conduct. *See* RPC 1.2(a) (providing that, "[s]ubject to [certain exceptions], a lawyer shall abide by a client's decision concerning the objectives of representation," including the "decision whether to settle a matter"); *cf. Kohlman*, 652 A.2d at 852 (noting that "the decisions whether to prosecute, defend, settle, or arbitrate a claim belong to the client, not to the attorney," and that "[t]he agent, therefore, while lacking authority to litigate pro se in his or her principal's stead, creates and controls the attorney-client relationship as fully as if he or she were the principal").

By reading the statutes in this way, we construe them consistently with existing Nevada law prohibiting the unauthorized practice of law, *see CityCenter*, 129 Nev. at 677, 310 P.3d at 580, and avoid a construction that would allow laymen to easily circumvent the same through the use of a power of attorney, *see Drake*, 26 Cal. Rptr. 2d at 832. We therefore reject Eby's arguments and hold that a nonlawyer agent under a power of attorney is not entitled to appear in pro se in place of the principal or engage in the practice of law on the principal's behalf. Accordingly, Eby has failed to demonstrate that reversal is warranted on this point, and we affirm the district court's order insofar as it struck Eby's second amended complaint.

COURT OF APPEALS
OF
NEVADA

(O) 1947B

16

*The district court plainly erred by imposing a case-concluding sanction without conducting the requisite analysis*

We turn now to Eby's remaining argument on appeal, which is that the district court's decision to dismiss his malpractice claim with prejudice was inconsistent with the court's oral pronouncement at the hearing on respondents' motion to dismiss that it would dismiss the case *without* prejudice if Eby failed to properly file an amended complaint within 30 days. Thus, he contends that the district court actually intended to dismiss the case without prejudice and that this court should reverse the dismissal on that ground. But this argument fails, as the written order granting Eby leave to amend plainly stated that the court would dismiss the case *with* prejudice, and written orders control over conflicting statements made at a hearing. *Kirsch v. Traber*, 134 Nev. 163, 168 n.3, 414 P.3d 818, 822 n.3 (2018). Moreover, Eby failed to properly raise this issue before the district court and has therefore waived it. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52-53, 623 P.2d 981, 983-84 (1981) (concluding that appellant waived its challenge to an alleged oversight in the district court's order, as "[i]t was incumbent upon the appellant to direct the trial court's attention to its asserted omission," but it failed to do so).

Because we generally decline to reach issues not properly raised by the parties, our analysis concerning the form of the district court's order dismissing Eby's malpractice claim would normally end here. *See Senjab v. Alhulaibi*, 137 Nev., Adv. Op. 64, 497 P.3d 618, 619 (2021); *Hung v. Genting Berhad*, 138 Nev., Adv. Op. 50, 513 P.3d 1285, 1288 (Ct. App. 2022). But our "ability . . . to consider relevant issues *sua sponte* in order to prevent plain error is well established." *Bradley v. Romeo*, 102 Nev. 103, 105, 716 P.2d 227, 228 (1986) (characterizing "plain error" as occurring where "clearly controlling [law] was not applied by the trial court"). And because

the district court plainly erred by dismissing Eby's last remaining claim with prejudice without conducting the analysis required for imposing case-concluding sanctions under the seminal case of *Young v. Johnny Ribeiro Building, Inc.*, 106 Nev. 88, 787 P.2d 777 (1990), and its progeny, we address this issue and reverse the district court's order dismissing Eby's malpractice claim. *See Fox v. Warren*, Nos. 80668 & 81212, 2021 WL 4205697, at *1 n.1 (Nev. Sept. 15, 2021) (Order of Reversal and Remand) (reaching the same issue sua sponte and noting that "[t]he imposition of case-concluding sanctions without an analysis under the *Young* factors is plain error because it contradicts controlling law").

In *Young*, our supreme court recognized that, in addition to specific sanctioning authority provided by law, "courts have inherent equitable powers to dismiss actions or enter default judgments for . . . abusive litigation practices." 106 Nev. at 92, 787 P.2d at 779 (omission in original) (internal quotation marks omitted). Such sanctions are generally reviewed for an abuse of discretion on appeal, but the *Young* court held "that a somewhat heightened standard of review" applies when the sanction is dismissal with prejudice. *Id.* This is because "dismissal with prejudice is a harsh remedy to be utilized only in extreme situations," which a court must weigh against the policy favoring disposition of cases on their merits. *Moore v. Cherry*, 90 Nev. 390, 393, 528 P.2d 1018, 1021 (1974). And "while dismissal need not be preceded by other less severe sanctions, it should be imposed only after thoughtful consideration of all the factors involved in a particular case." *Young*, 106 Nev. at 92, 787 P.2d at 780. Finally, *Young* required that trial courts support every order of dismissal with prejudice as a discovery sanction with "an express, careful and preferably written explanation of the court's analysis of [a nonexhaustive

list of] pertinent factors," including, among others, "the degree of willfulness of the offending party, the extent to which the non-offending party would be prejudiced by a lesser sanction, . . . [and] the feasibility and fairness of alternative, less severe sanctions." *Id.* at 93, 787 P.2d at 780.

Although *Young* concerned sanctions for discovery abuses, our supreme court has recognized its general applicability beyond this context in situations in which a court issues a case-terminating sanction in response to a party's conduct in litigation. *See Rish v. Simao*, 132 Nev. 189, 198, 368 P.3d 1203, 1210 (2016) (applying the heightened standard of review for case-concluding sanctions where the district court struck appellant's answer, entered a default, and conducted a prove-up hearing after appellant's counsel violated a pretrial order); *Lane v. Allstate Ins. Co.*, 114 Nev. 1176, 1181, 969 P.2d 938, 941 (1998) (reaffirming the applicability of *Young*'s heightened standard of review to cases involving "abusive litigation practices"); *see also Fox*, Nos. 80668 & 81212, 2021 WL 4205697, at *2 (reversing and remanding where the district court failed to weigh the *Young* factors when it dismissed appellant's complaint with prejudice after finding that appellant engaged in misconduct by impermissibly influencing witnesses and that appellant was vexatious). Indeed, the supreme court has noted that, even where the circumstances of an action ending in case-terminating sanctions are procedurally and factually distinct from those addressed in *Young*, it is "[t]he magnitude of the sanction [that] brings the action under the purview of *Young*." *Chamberland v. Labarbera*, 110 Nev. 701, 704-05, 877 P.2d 523, 525 (1994); *see Bahena v. Goodyear Tire & Rubber Co.*, 126 Nev. 606, 615 n.6, 245 P.3d 1182, 1188 n.6 (2010) (defining case-concluding sanctions as occurring in "cases in which the complaint is dismissed or the answer is stricken as to both liability and damages"); *see*

19

*also Francis v. Wynn Las Vegas, LLC*, 127 Nev. 657, 664 n.2, 262 P.3d 705, 710 n.2 (2011) (recognizing that a dismissal without prejudice does not implicate *Young*).

Here, particularly in light of the district court's change of position concerning the form of dismissal (i.e., without prejudice to with prejudice) from the time of the hearing on respondents' motion to dismiss to the entry of the resulting written order directing a more definite statement of the malpractice claim, it is not entirely clear why the district court determined that dismissal with prejudice would be appropriate if Eby failed to comply with the order within 30 days. Nevertheless, regardless of the rationale, the district court's decision to dismiss the action with prejudice after Eby failed to timely file a proper amended complaint amounted to a case-concluding sanction for Eby's failure to comply with a court order. *See Rish*, 132 Nev. at 198, 368 P.3d at 1210; *Bahena*, 126 Nev. at 615 n.6, 245 P.3d at 1188 n.6. Indeed, NRCP 12(e) states that, "[i]f the court orders a more definite statement and the order is not obeyed within . . . the time the court sets, the court may strike the pleading or issue any other appropriate order." And federal cases applying the identical Federal Rule of Civil Procedure 12(e) have characterized the court's options in this regard as "sanctions" for noncompliance with the court's order directing a more definite statement.[12] *See, e.g., Chennareddy v. Dodaro*, 282 F.R.D. 9, 14 (D.D.C. 2012) ("A party must comply with a district court order granting a

---

[12]"Federal decisions involving the Federal Rules of Civil Procedure provide persuasive authority for Nevada appellate courts considering the Nevada Rules of Civil Procedure." *Venetian Casino Resort, LLC v. Eighth Judicial Dist. Court*, 136 Nev. 221, 225 n.7, 467 P.3d 1, 5 n.7 (Ct. App. 2020) (alteration and internal quotation marks omitted).

motion for a more definite statement under Federal Rule 12(e) or run the risk of possible sanctions." (internal quotation marks omitted)).

Thus, although NRCP 12(e) broadly contemplates dismissal for noncompliance in appropriate situations, our district courts must carefully consider the circumstances of each case when fashioning an appropriate sanction under the rule. *See Young*, 106 Nev. at 92-93, 787 P.2d at 779-80; *Moore*, 90 Nev. at 393, 528 P.2d at 1021; 5C Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, *Federal Practice and Procedure* § 1379 (3d ed. Supp. 2022) ("The language 'any other appropriate order,' in the text of Rule 12(e), permits a variety of sanctions that stand midway between the harsh course of dismissal and the relatively benign punishment of repeating the order for a more definite statement."). In the words of one federal court of appeals, "[w]hile it is true that [Rule 12(e)] confers power upon a court to dismiss a claim for failure to amend the pleadings as directed, it is a power which is not to be exercised lightly, for it forecloses inquiry into the merits of the action." *Schaedler v. Reading Eagle Publ'n, Inc.*, 370 F.2d 795, 797-98 (3d Cir. 1967) (footnote omitted). And "[t]he draconian remedy of dismissal of the action should be invoked only as a last resort and not on the first evidence of inability of an inarticulate plaintiff to satisfy the requirements of the court." *Id.* at 799.

Given the foregoing, although some of the specific factors identified in *Young* pertain to discovery abuses and are inapplicable to the circumstances of this case, *see* 106 Nev. at 93, 787 P.2d at 780, the district court was nonetheless required to support and explain its decision to dismiss the underlying action with prejudice by analyzing the pertinent factors, particularly "the willfulness or culpability of the offending party, the prejudice to the non-offending party caused by the [offending party's

conduct], and the feasibility and fairness of alternative, less severe sanctions," *see MDB Trucking, LLC v. Versa Prods. Co.*, 136 Nev. 626, 631-32, 475 P.3d 397, 403 (2020) (internal quotation marks omitted) (identifying these as the "[e]ssential[ ]" *Young* factors); *see also Chennareddy*, 282 F.R.D. at 14 ("The court should strike an indefinite pleading without leave to replead only when the judge is satisfied that the pleader cannot or will not serve a pleading that will enable the opposing party to respond." (internal quotation marks omitted)); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1379 (3d ed. 2004) (providing that, "unless the moving party is prejudiced by the pleader's noncompliance [with an order directing a more definite statement], dismissal usually will not be granted"). Requiring such an analysis under these circumstances "not only facilitates appellate review, but also impresses upon the district court the severity of [the] sanction." *Chamberland*, 110 Nev. at 705, 877 P.2d at 525. We therefore reverse the district court's order dismissing Eby's malpractice claim with prejudice, and we remand this matter for further proceedings consistent with this opinion.

## CONCLUSION

Despite the broad authority granted under the UPOAA, a nonlawyer agent operating under a power of attorney concerning claims and litigation may not litigate an action in pro se in place of the principal or otherwise engage in the practice of law on the principal's behalf. The district court therefore correctly concluded that Eby's nonlawyer agent was engaged in the unauthorized practice of law, and we affirm its decision to strike the second amended complaint on that ground. But because the district court dismissed the remaining malpractice claim with prejudice without conducting the analysis required under *Young v. Johnny Ribeiro Building, Inc.*, 106 Nev. 88, 787 P.2d 777 (1990), and its progeny, we reverse

that dismissal and remand for further proceedings consistent with this opinion.

_____, C.J.
Gibbons

_____, J.
Tao

_____, J.
Bulla

COURT OF APPEALS
OF
NEVADA

(O) 1947B